[No. A092096. First Dist., Div. Five. July 10, 2001.]

AICCO, INC., et al., Plaintiffs and Appellants, v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants and
Respondents.

**COUNSEL**

Barger & Wolen, Roxani M. Gillespie, Kent R. Keller, Steven H. Weinstein, Ethan A. Miller; Cahill Gordon & Reindel and Floyd Abrams for Plaintiffs and Appellants.

Chavez & Gertler, Mark A. Chavez and Kim E. Card for United Policyholders, Consumer Federation of America, Consumers Union and the National Consumer Law Center as Amici Curiae on behalf of Plaintiffs and Appellants.

O'Melveny & Myers, Mark Wood, Martin S. Checov, Thomas M. Riordan, Laura C. Bremer; Orrick, Herrington & Sutcliffe, Steven A. Brick and Laura Grad for Defendants and Respondents.

**OPINION**

**JONES, P. J.**—AICCO, Inc., Granite State Insurance Company, and Northwestern Pacific Indemnity Company appeal, contending the trial court erred

when it sustained a demurrer and dismissed the complaint in which they alleged respondent Insurance Company of North America (INA) and various related entities had violated the unfair competition law (hereafter UCL). (Bus. & Prof. Code, § 17200 et seq.) Appellants are entities transacting insurance-related business. Their complaint sought declaratory and injunctive relief on the issue of whether respondent INA could shed all liability under a class of policies providing asbestos and environmental coverage, by restructuring itself and assigning its liabilities to another company, without obtaining the consent of affected California policyholders.

We agree the court erred when it sustained the demurrer and abused its discretion when it dismissed the complaint for lack of a justiciable controversy. We will reverse the judgment in favor of INA.

I. FACTUAL AND PROCEDURAL BACKGROUND

It is well settled that on review of an order sustaining a demurrer without leave to amend, we presume all material allegations of the complaint to be true. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) Appellants' complaint alleges the following material facts.

INA is the oldest stock insurance company in the United States. Over the course of its 200-year history, INA has sold billions of dollars of asbestos and environmental (A&E) insurance to consumers in California and elsewhere.

INA's A&E coverage was unprofitable for the company. Thus INA's corporate parents, CIGNA Corporation, and INA Financial, developed a plan for INA to shed its obligations under the A&E policies it had written. This was accomplished in the following manner.

INA was incorporated under the laws of Pennsylvania. That state has a statute that permits corporate "division." (See 15 Pa. Cons. Stat. §§ 1951-1957.) Thus, utilizing the "division" statute, INA divided into two entities. The first was (and still is) known as INA. It consists of the lines of insurance that had proved profitable for the predivision INA. The postdivision INA continues to write insurance under the INA name.

The second entity was CCI Insurance Company (CCI), a subsidiary of CIGNA. Pursuant to the division, INA "transferred" its obligations under the

A&E policies to CCI. Because CCI was not authorized to conduct insurance business in Pennsylvania, CCI then merged with another CIGNA subsidiary, Century Indemnity. Century Indemnity exists solely to handle and to pay pending and future claims, including A&E claims, out of a limited pool of assets provided to it by CIGNA. Century Indemnity does not write any new insurance or collect any new premiums.

INA contends that as a result of the restructuring, it is now free of any obligation to its California policyholders under the A&E policies it had written. According to INA, if Century Indemnity is unable to satisfy all those obligations, the owners of the transferred policies will have no recourse against INA as it currently exists.

The restructuring plan was approved by the Pennsylvania Insurance Commissioner in February 1996 without the consent of California policyholders, and without a requirement that consent be obtained. In July 1999, the Pennsylvania Supreme Court ruled that the procedures followed by the Insurance Department when approving the restructuring were adequate and that the plan could take effect. (See *LaFarge Corp. v. Com., Ins. Dept.* (1999) 557 Pa. 544 [735 A.2d 74, 79].) The court said, however, that policyholders were not foreclosed from asserting any legal rights they might have. (*Id.* at p. 77.)

The California Department of Insurance also approved the restructuring plan. That approval was expressly conditioned on the right of affected policyholders to challenge the impact of the reorganization in the courts.

The division of INA had immediate negative consequences for INA's California policyholders. Prior to the division, owners of the transferred policies were protected from the risk of INA's insolvency by the California Insurance Guarantee Association. Coverage under the guarantee fund is, however, only available when the claimant's insurer actually issued the policy under which a claim is made. Since Century Indemnity did not issue the transferred policies, those policies were no longer entitled to guarantee fund protection.

Under the order entered by the Pennsylvania Insurance Commissioner, INA was required to provide written notice to its policyholders regarding the allocation of INA's liabilities to Century Indemnity. INA did so in a form letter on CIGNA letterhead that was signed by Gerald Isom, the president of CIGNA and INA. The letter did *not* tell policyholders that INA had transferred its obligations under the A&E policies to Century Indemnity, or that it disclaimed further responsibility under the transferred policies. Instead the

letter stated "[g]enerally, INA policy claims with a date prior to January 1, 1996, are now handled by Century and claims on or after January 1, 1996, will be handled by INA. . . . [¶] There will be no change in the manner in which your claim is serviced. No additional action on your part is required."

In December 1999, two competitors of INA, appellants AICCO, Inc., and Granite State Insurance Company, filed the present action against INA and CIGNA. In January 2000, AICCO and Granite State, joined by another competitor of INA, appellant Northwestern Pacific Indemnity Company,[1] filed an amended complaint naming INA Financial, Century Indemnity Company and ACE Property Casualty Insurance Company as additional defendants.[2] The amended complaint contained a single cause of action. Appellants sought a declaration that INA had violated the UCL in two respects. First appellants relied on Civil Code section 1457 which states, "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise . . . ." Appellants alleged INA had violated Civil Code section 1457 when it transferred the A&E policies held by its California policyholders to Century Indemnity without their consent. Appellants sought a declaration that INA remained liable under the transferred policies. Alternately, appellants alleged that the notices INA had sent to its California policyholders were deceptive and misleading because they did not describe the true nature of what had occurred as a result of the restructuring. Appellants asked that INA be required to take "appropriate corrective action to alleviate the harm [its] previous misleading conduct has caused . . . ."

INA demurred to the complaint. It argued it was entitled to prevail as a matter of law because its conduct was not illegal under the UCL. INA supported its demurrer with numerous documents including orders issued by the Pennsylvania and California insurance departments when approving INA's corporate division.

The trial court sustained the demurrer without leave to amend. The court did not discuss whether Civil Code section 1457 had been violated or whether the notice provided by INA to its California policyholders was misleading. Instead, the court ruled that assessing the ability of Century Indemnity to satisfy the obligations undertaken by INA was "speculative" and "premature." The court also concluded that the Pennsylvania and California insurance departments alone possessed the expertise needed to determine whether California policyholders might suffer harm as a result of the transfer.

---

[1]For the remainder of this opinion, unless the context requires otherwise, we will refer to AICCO, Inc., Granite State Insurance Company, and Northwestern Pacific Indemnity Company, collectively as appellants.

[2]Unless the context requires more specificity, we will refer to the defendants collectively as INA.

After the trial court entered judgment in favor of INA, appellants filed the present appeal.

II. DISCUSSION

A. *The Complaint States a Cause of Action*

Appellants contend the trial court erred when it sustained the demurrer to their complaint.

"In reviewing a dismissal following the trial court's sustaining of a demurrer, we take the properly pleaded material allegations of the complaint as true; our only task is to determine whether the complaint states a cause of action." (*Snyder v. Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 995 [68 Cal.Rptr.2d 476, 945 P.2d 781].) We must " 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' [Citation.] [¶] If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)

Here appellants' complaint sought a declaration that INA had violated the UCL. That law prohibits "unfair competition," which is defined by the statute to include "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) " '[T]he Legislature intended this "sweeping language" to include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' " (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 560 [71 Cal.Rptr.2d 731, 950 P.2d 1086], quoting *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices that are unlawful, or unfair, or fraudulent. *(Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].) When determining whether a practice is "unlawful," section 17200 "borrows" violations of other laws, and makes them independently actionable under the UCL. (*Cel-Tech Communications, Inc.,* at p. 180.) Virtually any law—federal, state or local—can serve as a predicate for a section 17200 claim. (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 602 [89 Cal.Rptr.2d 370].)

In general, the "unfairness" prong has been used to enjoin deceptive or sharp business practices. (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 970 [69 Cal.Rptr.2d 623].)

The standard for determining whether an action is "fraudulent" within the meaning of Business and Professions Code section 17200 is simply "whether the public is likely to be deceived." (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105 [53 Cal.Rptr.2d 229], disapproved on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at pp. 184-185.) "This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." (*State Farm Fire & Casualty Co.,* at p. 1105.)

■ With these principles in mind, we turn to the complaint. Appellants alleged that INA violated the UCL when it transferred the A&E policies held by its California policyholders to Century Indemnity without obtaining the policyholders' consent. Appellants sought a declaration that INA remained liable to those policyholders. We agree appellants stated a cause of action under this theory.

Civil Code section 1457 states, "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise . . . ." This language does not mean " 'that a third person cannot assume the obligations of a contract between other parties, but only that he cannot relieve a party thereto from his obligations without the consent of the creditor.' " (*Wiseman v. Sklar* (1930) 104 Cal.App. 369, 374 [285 P. 1081].)

Two courts have applied these principles recently in the insurance context. In *Travelers Indemnity Co. v. Gillespie* (1990) 50 Cal.3d 82 [266 Cal.Rptr. 117, 785 P.2d 500], the court posed the question of whether an insurer that wished to withdraw from the market and to transfer its obligations to another company through a reinsurance and assumption agreement, could be released from liability to its insureds. The court ruled the original insurer would remain liable, explaining its decision as follows: "A contract by which a reinsurer *assumes* the policies of the original insurer does result in the reinsurer being directly liable to the original insureds [citation], but it does not release the original insurer, which remains jointly obligated with the reinsurer [citations]. Indeed, the original insurer cannot be released by any agreement with another insurer, absent the consent of the insured. (See Civ. Code, § 1457 . . . .)" (*Id.* at pp. 95-96.)

Similarly, in *Baer v. Associated Life Ins. Co.* (1988) 202 Cal.App.3d 117 [248 Cal.Rptr. 236], an insurance company had withdrawn from certain

insurance lines pursuant to a cease and desist order issued by the California Insurance Commissioner. The company then entered into a reinsurance and assumption agreement with a second insurer to take over its insurance contracts. When the second insurer defaulted, a plaintiff sought to recover from the original insurer, arguing it had never consented to the reinsurance and assumption agreement. Applying Civil Code section 1457, the court ruled the plaintiff could recover in those circumstances because "[i]t simply is not within the power of an insurer, against the consent of the insured, to substitute another insurer in carrying out its undertaking." (*Baer,* at p. 124.)

The results reached in *Travelers* and *Baer* are consistent with the manner in which insurance contracts are interpreted nationally. As a well-respected insurance treatise explains, "An insurer may not transfer its liability to another company and compel its policyholders to accept the new company as their insurer. When another insurance company assumes the insurer's obligations, the original insurer is not relieved of its liability to the insured without the consent of the insured to substitute another insurer." (14 Appleman on Insurance 2d (Holmes ed. 2000) § 109.1, p. 609, quoting *Security Ben. Life Ins. Co. v. F.D.I.C.* (D.Kan. 1992) 804 F.Supp. 217, 226.)

By alleging INA had transferred its A&E policies to Century Indemnity without obtaining policyholders' consent, and then disclaimed any further responsibility, appellants have pleaded a violation of Civil Code section 1457. The violation of Civil Code section 1457, in turn, was adequate to allow appellants to proceed under the theory that INA's action was an "unlawful" business practice under the UCL. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 180.) We conclude appellants' complaint states a cause of action under this theory.

We reach the same conclusion about the alternate theory of the complaint. Appellants alleged that the notice INA sent to its policyholders violated the UCL because it was deceptive and misleading. The notice did not mention that INA had transferred its contractual obligations to Century Indemnity, nor did it state that INA had disclaimed any further responsibility under the A&E policies it had written. Rather, INA told its policyholders to do nothing and implied that nothing of consequence had occurred. We conclude these actions were likely to deceive INA's A&E policyholders about the consequences of the reorganization and how it would affect their right to insurance coverage under the policies they had purchased. The allegations were sufficient to state a cause of action for fraud under the UCL. (Cf. *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1105.)

INA disputes these conclusions and advances a host of reasons why the court's order sustaining the demurrer should be affirmed. We now address those arguments.

## B. *The Complaint States a Justiciable Controversy*

 INA contends the trial court properly sustained the demurrer because appellants' complaint did not state a justiciable controversy.

First, noting that appellants framed their cause of action as one for declaratory relief, INA contends the trial court did not "abuse its discretion" when it declined to assume jurisdiction over the dispute. INA relies on authority that holds a trial court can sustain a demurrer if the "complaint is devoid of essential facts showing the necessity or propriety of a declaration . . . ." (*Wilson v. Transit Authority* (1962) 199 Cal.App.2d 716, 721 [19 Cal.Rptr. 59].)

While trial courts do have discretion to decline to issue a declaratory judgment, that power has been strictly confined. "Where . . . a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; and if it does enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficiently alleged." (*Columbia Pictures Corp. v. DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747]; see also 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 821, p. 277 & cases cites therein.)

 Here the complaint alleges that INA transferred its A&E policies to Century Indemnity and then disclaimed any further responsibility under those policies. Appellants contend that act violated Civil Code section 1457 and cases interpreting that section, which hold that "[i]t simply is not within the power of an insurer, against the consent of the insured, to substitute another insurer in carrying out its undertaking." (*Baer v. Associated Life Ins. Co., supra,* 202 Cal.App.3d at p. 124.) "A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) We conclude appellants' complaint satisfies these requirements. The trial court abused its discretion when it declined to assume jurisdiction over the case.

Next, INA contends the complaint was not justiciable because "in the absence of a default or breach, [Civil Code section] 1457 gives rise to no cause of action." To support this argument, INA relies primarily on a quote

from *Baer v. Associated Life Ins. Co.,* where the court stated, " ' "The obligations of an assignor of a contract continue to rest upon him and he will be required to respond to the other party to the contract *in the event of a default on the part of the assignee.* [Citation.]" ' " (*Baer v. Associated Life Ins. Co., supra,* 202 Cal.App.3d 117, 123, quoting *Wiseman v. Sklar, supra,* 104 Cal.App.2d at p. 374, italics added.) While the language quoted can reasonably be read to mean that a party who assigns a contract to a third party remains liable in the event of a breach by the assignee, it does not mean that Civil Code section 1457 is violated *only* when an assignee breaches. Indeed, in *Travelers Indemnity Co. v. Gillespie,* our Supreme Court held that when one insurance company assigns its obligations to another, "both the original insurer and the assuming insurer [are] obligated to the insured" and that the "original insurer cannot be released by any agreement with another insurer, absent the consent of the insured." (*Travelers Indemnity Co. v. Gillespie, supra,* 50 Cal.3d at pp. 95, 96.) Nowhere did the court state that a current or prospective breach was necessary. We conclude a cause of action under Civil Code section 1457 can be stated even if the party to whom a contract has been transferred is not in default.

INA also contends there is no justiciable dispute because it never disclaimed responsibility under the A&E policies that were transferred to Century Indemnity. Instead, INA contends it has "left the question of disclaiming liability under the policies . . . as a matter for an unknown (and unlikely) future day." Mindful of the issue before us, we reject this argument. When determining whether a complaint states a cause of action we are obligated to presume the material allegations of the complaint are true. (*Snyder v. Michael's Stores, Inc., supra,* 16 Cal.4th at p. 995.) Here appellants alleged INA has "taken the position . . . that [it] is now free of any obligation to pay policyholders the full amount to which they are entitled, if Century Indemnity does not do so" and that "if Century Indemnity is unable to discharge all of INA's future obligations under the Transferred Policies, the owners of the Transferred Policies will be without recourse against INA." These allegations were adequate to create a justiciable dispute.

## C. *Appellants Have Standing to Bring This Claim*

INA contends that appellants lack standing to bring the present suit.

Business and Professions Code section 17204 states that an action for relief under the UCL may be filed by *"any person* acting for the interests of itself, its members or the general public." (Italics added.) Our Supreme Court has interpreted this language to mean that " 'a private plaintiff who

has himself suffered no injury at all may sue to obtain relief for others.'" (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 561.) We conclude that under the broad language of Business and Professions Code section 17204 as interpreted by our Supreme Court, appellants have standing to bring the present suit.

The cases INA cites do not undermine this conclusion. *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861 [85 Cal.Rptr.2d 301] involved a claim by a car dealer that a lending institution employed a fraudulent method of calculating interest. The trial court dismissed the suit after concluding the defendants had not violated the UCL. The appellate court affirmed because " '[t]here is no evidentiary basis for restitution, disgorgement or injunctive relief under the standards of § 17200 because plaintiff failed to show actual deception or likelihood of deception in connection with any of the business practices or transactions at issue.'" (*Id.* at p. 898.) The court did not mention "standing" or base its decision on that ground.

Similarly in *Bronco Wine Co v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699 [262 Cal.Rptr. 899], the issue was the propriety of awarding restitution to grape growers who were not parties to the action. The appellate court noted the widely varying facts relating to each nonparty grower and decided to reverse the restitution judgment as to those nonparty growers. (*Id.* at pp. 715-721.) Again, the court did not mention "standing" or base its decision on that ground.

### D. *The Regulatory Proceedings Do Not Preclude Judicial Review*

INA contends the trial court properly "abstained" from deciding this case. This argument has several components. First INA contends the trial court acted properly when it "refus[ed] to revisit and, in effect, invalidate the restructuring plan approved by the Pennsylvania and California Insurance Commissioners . . . ." We reject this argument because it is based on a false premise. INA mischaracterizes the gravamen of the complaint as an action to invalidate the regulatory approval and reallocation of INA's assets. While appellants' prayer asked the court to declare that "INA's purported transfer to Century Indemnity of INA's liabilities to California policyholders and INA's release from future liability to those policyholders is invalid," the complaint fairly read does not ask the court to invalidate the regulatory order regarding the transfer of assets or to somehow "unwind" that division. Appellants simply asked the court to determine the legal consequence of the division: i.e., whether as a matter of California law, INA remained liable to

its "former" California policyholders even though their policies had been "transferred" to Century Indemnity. There was no need to abstain from deciding that legal issue.

Next, INA contends that the insurance department's approval of the corporate division precluded judicial review of the consequences of that division. According to INA "this litigation is at best duplicative of the efforts of responsible agencies and, at worst, impermissible judicial interference." This argument is unpersuasive factually and legally.

Factually, while the California Department of Insurance approved INA's division, it did not purport to decide the legal consequences of the division. Indeed, the insurance department expressly said that its consent "does not foreclose creditors, including policyholders, from pursuing any remedy at law which may be available to them."[3] Since the insurance department did not take a stance on the legal consequences of the division, any ruling in this case could not "interfere" with a ruling of that body.

Furthermore, even if the insurance department had made some sort of ruling on the legal consequences of the division, that ruling would not be binding here. The court in *Baer v. Associated Life Ins. Co., supra,* 202 Cal.App.3d 117, faced this precise issue. There a deputy insurance commissioner had made an explicit finding that the defendant insurance company was relieved from liability when it assigned policies to another insurer. The appellate court held the commissioner's finding was not binding, explaining its decision as follows: "With all due respect to [the deputy insurance commissioner's] authority, it simply does not encompass interpretation of law. Subject to review by the Supreme Court, we are the arbiters of what is meant by particular statutory language." (*Id.* at p. 123.) We conclude the Insurance Commissioner's approval of INA's division does not preclude judicial review.

Next INA contends the trial court properly abstained from deciding this case because in order to do so, the court would engage in "impermissible microeconomic regulation of the business of insurance." This is so, INA claims, because in order to decide this suit, "the . . . court would be required to comprehend and weigh . . . large-scale economic consider-ations—such as the adequacy of reserves, reinsurance and other capitaliza-tion in the hands of Century Indemnity to process billions of dollars worth of

---

[3]The Pennsylvania Supreme Court reached a similar conclusion. While it ruled the Penn-sylvania Insurance Department had followed the appropriate procedures when approving the division, it was careful to explain that "no judicial remedies are foreclosed by the depart-ment's approval of the plan of restructure and division. Such claims were outside the jurisdiction of the insurance department, and are not barred by department approval of restructuring plans." (*LaFarge Corp. v. Com., Ins. Dept., supra,* 735 A.2d at p. 77.)

claims actuarially projected to occur, in a particular estimated volume, frequency and value, over several decades . . . ." We reject this argument because the various "considerations" INA cites all relate to the ability of Century Indemnity to pay whatever claims may arise under the transferred policies. As we have explained, this ability of the party to whom a contract is assigned or transferred is irrelevant when determining whether Civil Code section 1457 has been violated. Thus the court will not be required to evaluate those "considerations" in order to decide the present suit. There was no need to abstain.

INA also contends the trial court properly abstained from deciding appellant's suit under the doctrine of primary jurisdiction. ■■■ That doctrine comes into play " 'whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' . . ." *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-391 [6 Cal.Rptr.2d 487, 826 P.2d 730], citations omitted.) The doctrine of primary jurisdiction "advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. . . . [¶] No rigid formula exists for applying the primary jurisdiction doctrine . . . . Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. . . . This discretionary approach leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by interests of justice." (*Id.* at pp. 391-392, citations & fn. omitted.)

■■■ To the extent the trial court relied on the doctrine of primary jurisdiction when sustaining INA's demurrer, the court erred in two respects. ■■■ First, if a court decides to invoke the doctrine of primary jurisdiction, the proper procedure is not to dismiss the action, but to stay it, pending the administrative body's resolution of the issues within its jurisdiction. (*Farmers Ins. Exchange v. Superior Court, supra,* 2 Cal.4th at p. 401; see also *Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287, 295-296 [91 Cal.Rptr.2d 479].) ■■■ The trial court could not validly sustain the demurrer and dismiss the suit on primary jurisdiction grounds. Second, it is clear that the doctrine of primary jurisdiction is not applicable under the facts of this case. Appellants alleged in their complaint, and the record shows, that INA's corporate division is complete. After approval by insurance authorities in California and Pennsylvania, the INA was divided

and the A&E policies at issue were transferred to Century Indemnity. INA has not described, and we are not aware of, any pending or proposed administrative proceedings that have as their focus, the corporate division itself. Since the administrative bodies have already rendered whatever decision might be relevant to the present suit, there was no need to stay the action for further action by some administrative body.

Finally, INA contends the trial court acted correctly when it declined to "entertain appellants' request for declaratory relief" because Civil Code section 1457 does not apply to transfers that occur "by operation of law." We disagree. The language of Civil Code section 1457[4] contains no such restriction. We decline to impose a limitation that is not required by the plain language of the statute. The cases INA cites do not lead us to a contrary conclusion. In *Trubowitch v. Riverbank Canning Co.* (1947) 30 Cal.2d 335, 344 [182 P.2d 182], the court said "a provision against assignment in a contract or lease does not preclude a transfer of the rights thereunder by operation of law . . . ." Here we are not dealing with a clause in a contract or lease that precludes assignment. Furthermore, the *Trubowitch* court did not discuss the issue that is pivotal in the present case, i.e., whether the original assignor is still liable under Civil Code section 1457. The case is inapplicable. *Treadaway v. Camellia Convalescent Hospitals, Inc.* (1974) 43 Cal.App.3d 189, 200 [118 Cal.Rptr. 341] is likewise inapposite. The court said, " 'The creditors of a corporation cannot prevent its consolidation or merger with another corporation even if the new debtor corporation is not as satisfactory to them as the old.' " Here we are called upon to determine the legal consequences of a corporate division, and whether such a division insulates INA from the requirements of Civil Code section 1457. We are not asked to evaluate the legal consequences of a merger.

### E. *The Case Is Governed by California Law*

■ INA contends this action is governed by Pennsylvania law. According to INA, applying California law to this dispute would "violate principles of conflict of laws, comity and full faith and credit." We reject this argument on procedural grounds. INA has not made a serious attempt to support its argument. It does not discuss conflict of laws, comity, or full faith and credit in any detail, or analyze why, under each principle, Pennsylvania, as opposed to California law would apply. We deem the issue waived. (Cf. *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2 [87 Cal.Rptr.2d 654, 981 P.2d 499].)

---

[4]Civil Code section 1457 states, in part, "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise . . . ."

### F. The Complaint Alleges Unlawful Conduct

■ INA contends the trial court properly sustained its demurrer because the complaint does not allege unlawful conduct. Citing case law that holds a business practice cannot be unlawful under the UCL if it is permitted by law (see *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1505 [82 Cal.Rptr.2d 368]), INA contends it was not unlawful for it to transfer its A&E policies to Century Indemnity because the California Department of Insurance approved the corporate division. While the insurance department approved INA's corporate division, it did not state any opinion on the legal consequences of the division. Indeed, the insurance department expressly said that its approval did not preclude INA's policyholders from asserting whatever legal rights they may have as a result of the reorganization. We conclude the insurance department approval did not preclude the present suit.

INA also contends that the notices it sent to its policyholders describing the reorganization cannot be deemed "misleading" or "deceptive" under the UCL because those notices were ordered by the Pennsylvania and California insurance departments. While one of the documents INA submitted in support of its demurrer shows the Pennsylvania Insurance Department told INA it was required to notify its policyholders about the division,[5] the document does not indicate that INA was obligated to use any particular language. We conclude INA can be liable under the UCL for phrasing the mandated notices in an allegedly misleading way.

### G. Moradi-Shalal Does Not Preclude the Present Suit

INA contends the Supreme Court's decision in *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] precludes the present suit.

■ In *Moradi-Shalal,* the Supreme Court ruled that a plaintiff may not seek damages against an insurer under the Unfair Insurance Practices Act (UIPA) (Ins. Code, § 790 et seq.) because the UIPA does not allow for a private right of action for damages. (*Moradi-Shalal v. Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 304.) Subsequent cases have held that a plaintiff cannot plead around the bar to private causes of action under the UIPA by recasting his or her suit as one under the UCL. (See, e.g., *Safeco Ins. Co. v. Superior Court* (1990) 216 Cal.App.3d 1491, 1494 [265 Cal.Rptr.

---

[5]We find nothing in the record that indicates the California Department of Insurance told INA to notify its policyholders about the division.

585].) INA contends the complaint here alleges acts that violate the UIPA and thus that the complaint is barred by *Moradi-Shalal.* We disagree.

The Supreme Court addressed a similar argument in *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257 [41 Cal.Rptr.2d 220, 895 P.2d 56] (*Manufacturers Life*). There the plaintiff's complaint alleged violations of the UIPA, the UCL and the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.). The Court of Appeal held that because the UIPA did not create a private civil cause of action, the plaintiff could not plead around that limitation by relying on conduct which violated only the UIPA as the basis for the UCL cause of action. But the plaintiff's complaint was not so limited. The Court of Appeal ruled the trial court properly overruled a demurrer to the complaint because the conduct on which the plaintiff predicated the UCL cause of action also violated the Cartwright Act. (*Manufacturers Life,* at p. 283.) The Supreme Court affirmed the decision of the Court of Appeal, stating as follows: "As the Court of Appeal . . . recognized . . . a cause of action for unfair competition based on conduct made unlawful by the Cartwright Act is not an 'implied' cause of action which *Moradi-Shalal* held could not be found in the UIPA. . . . [¶] . . . The court [in *Moradi-Shalal*] concluded . . . that the Legislature did not intend to create new causes of action when it described unlawful insurance business practices in [Insurance Code] section 790.03, and therefore that section did not create a private cause of action under the UIPA. The court did not hold that by identifying practices that are unlawful in the insurance industry, practices that violate the Cartwright Act, the Legislature intended to bar Cartwright Act causes of action based on those practices." (*Manufacturers Life*, at p. 284.)

■ We reach a similar conclusion here. Even if we were to assume that some of the conduct alleged in the complaint comes within the scope of the acts prohibited by the UIPA, it *also* potentially violates Civil Code section 1457. As in *Manufacturers Life, supra,* 10 Cal.4th 257, we conclude the complaint is not barred because the acts that form the basis for the violations of Civil Code section 1457, might also violate the UIPA.

## H. *The Complaint Does Not Seek Redress for Competitive Injury*

INA contends that to the extent the complaint seeks redress for a competitive injury, it is precluded because it fails to allege anticompetitive conduct. ■ INA relies on a quote from *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at page 187, where our Supreme Court set forth the standard that governs actions of that type. The court ruled as follows: "When a plaintiff who claims to have suffered injury

from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."

■ We have no quarrel with the standard articulated by the Supreme Court, which we are obligated to apply. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) However appellants' complaint does not allege that *they* suffered injury because of INA's activities. Absent such allegations, the principle described in *Cel-Tech Communications, Inc.*, does not apply.

I. *Respondent CIGNA Is a Proper Party to the Action*

The complaint alleges that respondent CIGNA Corporation, the parent of respondents INA, INA Financial, and Century Indemnity, sold those companies to ACE Limited, on or about July 2, 1999.

CIGNA has now filed a separate brief on appeal in which it contends that because it sold its interest in the other respondents, it is not a proper party to the suit. CIGNA relies on Code of Civil Procedure section 430.10, which states, "The party against whom a complaint . . . has been filed may object, by demurrer . . . to the pleading on any one or more of the following grounds: [¶] . . . [¶] (d) There is a defect or misjoinder of the parties." According to CIGNA, "Because . . . . INA Financial, INA, and Century [Indemnity] have a new parent—ACE-INA—CIGNA Corporation has no right to control any action of its former subsidiaries. As a result, ordering CIGNA Corporation . . . to refrain from disseminating certain information regarding the other respondents' liabilities under the Restructuring Plan or to publish information regarding the Restructuring Plan is legally ineffective."

We are unpersuaded. The fact that CIGNA has sold INA, INA Financial, and Century Indemnity may well restrict what remedies the court would be able to impose should it find in favor of appellants. However, the court would not be powerless. Injunctive relief is available under the UCL (see *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 540 [63 Cal.Rptr.2d 118]) and the court could order CIGNA not to engage in similar allegedly unlawful conduct in the future. We conclude CIGNA is not immune from suit simply because it sold INA, INA Financial, and Century Indemnity to another entity.

## III. DISPOSITION

The judgment is reversed. Costs to appellants.

Stevens, J., and Simons, J., concurred.

A petition for a rehearing was denied July 31, 2001, and respondents' petition for review by the Supreme Court was denied October 10, 2001. George, C. J., did not participate therein.