Humes, P.J.
Appellant Pneuma International, Inc. sued a former employee, a competitor the employee went to work for, and a Pneuma investor, alleging several business torts. The investor filed a cross-complaint against Pneuma and its owner alleging they breached their investor agreement. Following a court trial, the court ruled against Pneuma on all the causes of action it asserted, with the exception of a single cause of action for trespass to chattel; and it ruled in favor of the investor on his cross-complaint. Pneuma challenges the trial court's rulings on some, but not all, causes of action. We affirm. In the published portion of our opinion, we hold that a determination a party engaged in a trespass to chattel in a business context does not, without more, establish that the party engaged in an unlawful business practice under California's Unfair Competition Law. ( Bus. & Prof. Code, § 17200, hereafter section 17200 or UCL.)
I.
FACTUAL AND PROCEDURAL BACKGROUND
Pneuma is a supplier of paper goods to distributors and wholesalers. At least as far back as 2012, the company (then known as Egpak) sold a 10-ounce "ripple soup cup" and matching lid, which was supplied by a Chinese manufacturer and freight company. One of the company's customers for the cups was Heritage Paper, which in turn supplied the soup cups to Kaiser Hospitals.
While respondent Yong Kwon Cho was an employee of Egpak, he set up the website domain www.egpak.com using his personal Yahoo! email address, and became the registered owner of the domain. The website domain was used as a repository of the company's business records, including its financial books, contact information for vendors and customers, and purchase orders. Cho installed various programs on company computers and created email addresses for company employees.
*95 In October 2012, Cho signed a non-disclosure agreement with Mikahel Chang, who was the owner and developer of certain food-container products and who was in the process of purchasing Egpak. The agreement stated that Chang intended to disclose confidential information about the products to Cho. Two days after the agreement was signed, Chang entered into a purchase agreement to acquire Egpak, which then became Pneuma. The purchase agreement included the sale of the www.egpak.com website domain.
In March 2013, respondent Bruce Chalmers entered into an equity/shareholders investment agreement with Pneuma. Under the agreement, Pneuma agreed to sell shares of common stock to Chalmers for $ 50,000, and the company agreed pay Chalmers periodically based on Chang's monthly salary and the company's profits. Chang personally guaranteed the payment and performance of Pneuma's indebtedness and obligations, but his liability under the guaranty was limited to $ 50,000 plus interest.
Cho left Pneuma in mid-December 2013 to work for respondent Central United Packaging, Inc. (CUP). He trained another Pneuma employee to take over his position, but that training was not complete by the time he left the company. After he left Pneuma, Cho remotely accessed the company's computer several times in late December 2013. According to Cho, he did so in response to calls for help from the employee who took over his position.
CUP used the web domain igcpack.com. Heritage Paper switched from Pneuma to CUP to supply its ripple cups. CUP continued to use the same Chinese manufacturer and freight company to supply them with the same 10-ounce soup cup and lid previously provided by Pneuma.
In January 2014 Pneuma demanded Cho's email communications. Cho downloaded all the email from one of his two epak.com email accounts (as opposed to his personal Yahoo! account) onto a USB drive. He and his attorney went to Pneuma's offices to deliver the drive to Chang, but Chang refused to meet with either of them. The USB drive was given to Cho's successor at Pneuma, who gave it to Chang. Chang did not open the drive because he was concerned it might be contaminated, and he instead gave the drive to his attorney.
Chang also demanded that Cho transfer ownership of the egpak.com domain. Pneuma was informed that in order to transfer ownership, Yahoo! required that Pneuma's system be shut down for a period of hours and possibly even an entire weekend. A computer expert for Pneuma informed Chang that there were "certain other risks to having the domain shut down[,] including potential loss of information or data." Chang was unwilling to allow the system to be shut down and also refused the option of backing up Pneuma's emails and other data on the domain in order to mitigate the risks involved with the transfer. Cho was willing to have Pneuma substituted in his place as the registered owner of the egpak.com domain but refused to allow complete access to all of his personal email accounts associated with the domain.
Meanwhile, Chalmers claimed that Chang owed him money for commissions, loan repayment, and investments. The two worked in 2014 to resolve their dispute. An informal mediation led to a tentative agreement, which was memorialized in a memorandum that Chalmers emailed to Chang on May 12. Chalmers wrote in the final paragraph of the memorandum that he would have his attorney "write up the agreement." Chang tried to add or modify terms to the agreement, and Chang's attorney emailed Chalmers a written addendum.
*96 Chalmers was "incensed" about the changes.
After further negotiation, the parties reached what Chalmers believed was a new agreement, and on June 25 emailed Chang another memorandum setting forth the terms of the revised agreement. The email memorandum lists nine "terms we both agreed to," and it concludes, "The ball is in your court, no more excuses or delays-this starts Aug 1, 2014." Chalmers printed the email and signed it, along with Barry Willis, a sales manager with Heritage Paper. Chang did not sign the agreement, and Chalmers did not hear a response from Chang. Chang nevertheless later argued, and Chalmers disputed, that the June 24 memorandum represented a valid and enforceable oral settlement agreement.
Pneuma initiated these proceedings in October 2014 against Cho, CUP, and Chalmers. As amended, the complaint stated 15 causes of action, not all of which are implicated in this appeal. We primarily address the following causes of action: violation of California's Comprehensive Computer Data Access and Fraud Act ( Pen. Code, § 502 ) against Cho and CUP (the second cause of action); recovery of personal property against Cho and CUP, later construed by the trial court as trespass to chattel (the fourth cause of action); conversion and misappropriation against Cho and CUP (the fifth cause of action); common law unfair competition and trade name infringement against Cho and CUP (the sixth cause of action); and unfair competition under section 17200 against all respondents (the fifteenth cause of action). Chalmers filed a cross-complaint against Pneuma and Chang for rescission, breach of contract, and other causes of action.
Pneuma's computer expert was tasked with investigating Pneuma's computers in October 2015 after a suspected burglary on Pneuma's premises. The expert discovered that two of Cho's egpak.com email accounts had been deleted from the system. The expert was unable to determine who had deleted the email accounts or when the deletions occurred.
A court trial began in April 2016. At the time of trial, Cho remained the registered owner of the egpak.com domain. According to respondents' information-technology expert, the protocol for transferring the domain to Chang or Pneuma had changed and would no longer require the website to shut down.
After Pneuma presented its case, respondents filed a motion for entry of judgment or, in the alternative, adjudication in their favor on each cause of action. ( Code Civ. Proc., § 631.8.) The trial court granted the motion in part and denied it in part in a statement of decision filed on July 5, 2016. As relevant to this appeal, the court granted judgment in Chalmers's favor on Pneuma's claim based on the alleged settlement agreement between the two. The court concluded that Pneuma had not established that the June 24, 2014 memorandum Chalmers sent to Chang "represent[ed] anything more than a counter-proposal." The court therefore granted Chalmers's motion for judgment as to the twelfth cause of action, for breach of the implied covenant of good faith and fair dealing. As we discuss below, it is unclear whether Pneuma challenges that ruling in this appeal.
The trial court also ruled in favor of Cho and CUP on Pneuma's sixth cause of action, for unfair competition and trade name infringement. It did so after rejecting Pneuma's argument that the general public or the wholesale food packaging products industry in the Bay Area would necessarily confuse Igcpack or IGCPACK.com (CUP's web domain) with Egpak, Inc. or EGPAK.com (Pneuma's web domain).
*97 The trial continued, and respondents presented their defense to Pneuma's remaining causes of action. In a second statement of decision filed on March 22, 2017, the trial court ruled in favor of Chalmers and CUP on Pneuma's remaining causes of action against them and in favor of Cho on all but one cause of action against him. As relevant to this appeal, and as discussed in more detail below, the trial court concluded that Pneuma had not established all the elements of a claim under the Comprehensive Computer Data Access and Fraud Act ( Pen. Code, § 502, the second cause of action). The court further concluded that Pneuma had not established a cause of action for conversion (the fifth cause of action). As for Pneuma's fourth cause of action against Cho, for conversion/recovery of personal property (the egpak.com domain), the trial court relabeled the cause of action as trespass to chattel and entered judgment in Pneuma's favor against Cho. The court directed Cho to transfer the contents of the domain to Pneuma (or its designee), excluding Cho's personal emails that did not constitute Pneuma's business records. Cho did not appeal from the judgment against him. The court further concluded that Pneuma had not established that any of the respondents had committed a violation of section 17200 (the fifteenth cause of action).
Finally, the trial court entered a separate statement of decision on March 22, 2017, addressing Chalmers's cross-complaint against Pneuma and Chang. The court concluded that Pneuma and Chang had breached the terms of the parties' equity/shareholders investment agreement. The court ordered Pneuma to pay Chalmers $ 219,638.37 in damages and Chang to pay any unsatisfied portion of the judgment, not to exceed $ 50,000.
Judgment was entered in April 2017, and Pneuma timely appealed. An "amended judgment" was entered in June 2017 awarding respondents attorney fees and costs, which Pneuma does not challenge. Although Pneuma's appellate counsel represented both Chang and Pneuma below, an opening brief was filed on behalf of Pneuma only.
II.
DISCUSSION
A. Pneuma Established that Cho Committed Trespass to Chattel.
Before we turn to Pneuma's arguments, we discuss the legal elements for the one cause of action upon which the company prevailed, trespass to chattel, because many of Pneuma's arguments require an understanding of this tort.
"Dubbed by Prosser the 'little brother of conversion,' the tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered.' (Prosser & Keeton, Torts (5th ed. 1984) § 14, pp. 85-86.)" ( Intel Corp. v. Hamidi (2003) 30 Cal.4th 1342, 1350, 1 Cal.Rptr.3d 32, 71 P.3d 296.) "Though not amounting to conversion, the defendant's interference must, to be actionable, have caused some injury to the chattel or to the plaintiff's right in it. Under California law, trespass to chattels 'lies where an intentional interference with the possession of personal property has proximately caused injury.' [Citation.] In cases of interference with possession of personal property not amounting to conversion, 'the owner has a cause of action for trespass ..., and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.' [Citations.] In modern American law generally, '[t]respass remains as an occasional remedy for minor interferences, resulting in some damage, but not sufficiently serious or sufficiently important to amount to the greater *98 tort' of conversion. (Prosser & Keeton, Torts, supra , § 15, p. 90 ....)" ( Id. at pp. 1350-1351, 1 Cal.Rptr.3d 32, 71 P.3d 296, italics omitted.)
As we have mentioned, the trial court relabeled Pneuma's fourth cause for conversion/recovery of personal property as one for trespass to chattel and found in favor of Pneuma against Cho (but not CUP). The court concluded that Pneuma had established the necessary elements of the tort: (1) Pneuma owned, possessed, or had a right to possess the egpak.com domain and its contents; (2) Cho intentionally interfered with Pneuma's use or possession of that property; (3) Pneuma did not consent; (4) Pneuma was harmed; and (5) Cho's conduct was a substantial factor in causing Pneuma's harm. ( CACI No. 2101.) The court analogized the egpak.com domain to a storage locker: "The personal property at issue here is not the storage locker, but the contents of the storage locker. In other words, even though the storage locker (here, the egpak.com domain) is arguably 'owned' by Cho, it is undisputed the contents of the storage locker-the business records and email communications associated with the business-are personal property of Pneuma. By holding the only key to the storage locker, Cho is exercising unauthorized interference over the contents of that locker, to wit, Pneuma's business records. Among other things, because it is not the 'registered owner' of the domain insofar as Yahoo is concerned, [Pneuma] is unable to prevent Cho (or anyone else) from accessing or viewing its business records and it is even unable to pay the fees necessary to keep the domain up and running. However, because the interference in this case has not been 'substantial'- as [Pneuma] has generally been able to access its records, it continues to conduct business and Cho has cooperated in keeping the site on line- the court concludes the alleged unconsented interference here does not amount to conversion." The court further concluded that it was immaterial whether Pneuma had established that it suffered monetary damages as a result of the trespass. Pneuma had established the necessary element of "harm" by virtue of "its mere inability to control and protect its personal records from being accessed by defendant, a local competitor in its business. [Pneuma]'s request for equitable relief is therefore merited where, as here, monetary damages (assuming any existed) would be insufficient to compensate for this type of on-going harm."
With these principles and rulings in mind, we turn to Pneuma's specific attacks on the judgment.
B.-C.**
D. Pneuma Did Not Establish that Any Respondent Engaged in Unfair Competition.
1. Summary of Law.
The UCL prohibits "unfair competition," defined in section 17200 as "any unlawful, unfair or fraudulent business act or practice." Because the statute "is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices that are unlawful, or unfair, or fraudulent." ( AICCO, Inc. v. Insurance Co. of North America (2001) 90 Cal.App.4th 579, 587, 109 Cal.Rptr.2d 359.) Two of Pneuma's causes of action alleged unfair competition, which we address separately.
2. Pneuma Did Not Establish that Cho Violated the UCL.
a. A Trespass to Chattel, Without More, Does Not Satisfy the UCL's "Unlawful" Prong.
Pneuma's fifteenth cause of action alleged that the three respondents "violate[d]
*99 state statutes and regulations, and state common law, each of which constitute[d] an independent and separate violation of" section 17200. Stated differently, the company contended that this conduct implicated the "unlawful" prong of section 17200. The trial court concluded that because Pneuma had not established any cause of action against Chalmers or CUP, the company likewise had not established they committed an unlawful, unfair, or fraudulent business act (the fifteenth cause of action).
As for Cho, the trial court concluded that although his failure to transfer ownership of the egpak.com domain to Pneuma amounted to trespass to chattel, the conduct did not amount to a fraudulent or unfair business practice within the meaning of section 17200. On appeal, Pneuma contends that because it prevailed on a cause of action for trespass to chattel, it necessarily follows that it also should have prevailed on its cause of action for unfair competition under section 17200. We disagree.
"By proscribing 'any unlawful' business practice, ' section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." ( Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.) "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made." ( Saunders v. Superior Court (1994) 27 Cal.App.4th 832, 838-839, 33 Cal.Rptr.2d 438.)
Pneuma acknowledges that there appears to be no caselaw finding a violation of the UCL based on trespass to chattel (which is not surprising given the dearth of modern authority on the tort). It argues, however, that because California courts have historically interpreted the unlawfulness prong of UCL broadly, there is no reason not to "borrow" this common law tort to find a violation. True, the scope of the UCL is broad. (E.g., Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296, 45 P.3d 243.) "Since the addition of the word 'unlawful' to the predecessor statute in 1963, [ section 17200 ] has been liberally construed so as not to be limited to traditional anticompetitive practices." ( People v. E.W.A.P., Inc. (1980) 106 Cal.App.3d 315, 318-319, 165 Cal.Rptr. 73.) The Legislature intended the sweeping language of the statute to include anything that is properly characterized as a business practice and that also is forbidden by law. ( Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545.) The key principle for our purposes is that the practice actually be forbidden by a specific law. "In drafting the [UCL], the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity." ( Id. at pp. 1266-1267, 10 Cal.Rptr.2d 538, 833 P.2d 545.) Here, however, Pneuma does no more than identify a non-criminal tort upon which it prevailed and argue that this was also a basis for a UCL violation, as opposed to "borrowing" a specific law.
The cases upon which Pneuma relies do not advance its argument. The plaintiffs in Bondanza v. Peninsula Hospital & Medical Center (1979) 23 Cal.3d 260, 265-266, 152 Cal.Rptr. 446, 590 P.2d 22, relied on former provisions of the Civil Code for the "unlawful" prong of section 17200, and the plaintiffs in Espejo v. The Copley Press, Inc. (2017) 13 Cal.App.5th 329, 367, 221 Cal.Rptr.3d 1, based their section 17200 claim on Labor Code section 2802. Wilson v. Hynek (2012) 207 Cal.App.4th 999, 1008, 144 Cal.Rptr.3d 4, did not involve section 17200's "unlawful" prong but instead was based on the "unfair" prong. Because *100 Pneuma does not address why its trespass to chattel cause of action was actionable under the "unfair" or "fraudulent" prongs of the UCL, we need not consider the issue.
Although not directly relevant to whether Pneuma may "borrow" a tort as a basis for a UCL cause of action, respondents correctly observe that Pneuma may not recover damages under a UCL cause of action because remedies under the act are purely equitable in nature. (E.g., Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1150-1151, 131 Cal.Rptr.2d 29, 63 P.3d 937 [remedies provided under UCL "are limited" and "it is well established that individuals may not recover damages"].) Pneuma does not identify what additional relief it would be entitled to if it prevailed on its UCL cause of action. The trial court already ordered the equitable relief of transferring the egpak.com website to Pneuma after it prevailed on a cause of action for trespass to chattel. We conclude that the trial court did not err in declining to base a UCL cause of action on the common-law tort of trespass to chattel under these circumstances.
b. Pneuma Did Not Otherwise Establish that Cho Engaged in Unfair Competition.***
3. Pneuma Failed to Establish Tradename Infringement.†
E. Pneuma Fails to Demonstrate Error in the Trial Court's Rulings on Causes of Action Related to Chalmers.††
III.
DISPOSITION
The judgment is affirmed. Respondents shall recover their costs on appeal.
WE CONCUR:
Margulies, J.
Sanchez, J.

See footnote *, ante .

See footnote *, ante .

See footnote *, ante .

See footnote *, ante .