[No. B030718. Second Dist., Div. Four. May 18, 1988.]

RONALD A. BAER et al., Plaintiffs and Appellants, v.
ASSOCIATED LIFE INSURANCE COMPANY, as Trustee, etc.,
et al., Defendants and Respondents.

COUNSEL

Shernoff & Levine, Shernoff, Scott & Bidart and Marian Haycock Tully for Plaintiffs and Appellants.

Peterson, Ross, Schloerb & Seidel and David C. Nelson for Defendants and Respondents.

OPINION

**GOERTZEN, J.**—Plaintiffs/appellants Ronald A. Baer and Linda Baer (appellants) appeal from the summary judgment entered against them and

in favor of defendants/respondents Associated Life Insurance Company et al. (Associated Life).

UNDERLYING FACTS

While an employee of Virgil's Auto Body and Paint, appellant Ronald Baer was insured under a group medical insurance policy issued by Associated Life on September 1, 1981. The policy provided a lifetime maximum of $1 million in major medical insurance benefits. On October 30, 1982, Mr. Baer was seriously injured in an automobile accident and was rendered a quadriplegic. On February 1, 1983, Associated Life terminated Mr. Baer's coverage under the policy. Up to that time, Associated Life had paid all Mr. Baer's benefits due for covered medical expenses. Associated Life informed Mr. Baer that he was entitled to coverage under the extension of benefits provision for all complications arising out of the October 30, 1982, accident until February 1, 1984.

On November 18, 1982, pursuant to Insurance Code section 1065.2, the Commissioner of Insurance issued a cease and desist order to Associated Life, ordering it, with some exceptions, "to cease . . . transacting or writing any new or renewal insurance business of any kind in the state of California" as it was conducting business in a hazardous manner.[1] In response to that order, Associated Life chose to withdraw from providing certain coverage in this state and, as required by Insurance Code section 1071.5,[2] entered into a reinsurance and assumption agreement with California Life Insurance Company (Cal Life). Pursuant to this agreement, Cal Life acquired all Associated Life's rights and assumed all its liabilities under its policies, effective February 1, 1983. The agreement described the policies assumed as "United Associated Trust VIP Plan." Associated Life retained claim liability for a period of 90 days after February 1, 1983, up to May 1, 1983, for expenses incurred by insureds, such as Mr. Baer, who were disabled on or before February 1, 1983. As required by Insurance Code section 1090,

---

[1] The order, in pertinent part, stated: "(a) The company is ordered to immediately cease and desist the transacting or writing of any new or renewal insurance business of any kind in the State of California, other than the renewal of outstanding individual permanent (not term) life insurance policies and outstanding individual noncancellable and guaranteed renewable policies or outstanding individual guaranteed renewable policies; and any resumption of any of such business shall be made only with the prior written consent of the Insurance Commissioner."

[2] Insurance Code section 1071.5 provides, "Every insurer which withdraws as an insurer, or is required to withdraw as an insurer, from this State shall, prior to such withdrawal, discharge its liabilities to residents of this State. In the case of its policies insuring residents of this State it shall cause the primary liabilities under such policies to be reinsured and assumed by another admitted insurer. In the case of such policies as are subject to cancellation by the insurer, it may cancel such policies pursuant to the terms thereof in lieu of such reinsurance and assumption."

Associated Life submitted this agreement to the Commissioner of Insurance for approval, which he gave.

According to appellants, their approval of this agreement was not sought nor did they ever receive notice of its creation. However, Associated Life claims that notice was provided to each insured, and, as shall be seen below, appellants did submit subsequent medical claims to Cal Life.

On October 26, 1983, complications arose from Mr. Baer's 1982 automobile accident, requiring his hospitalization. Appellants filed a claim for medical, surgical and hospital expense benefits, to which they were entitled until February 1, 1984. Cal Life failed and refused to pay the claim.

On April 12, 1986, the Superior Court appointed the Insurance Commissioner as conservator of Cal Life, finding Cal Life "to be in such a condition that its further transaction of business [would] be hazardous to its policyholders, creditors, and to the public."

### PROCEDURAL HISTORY

Appellants' first amended complaint, the operative one on appeal, was filed May 7, 1985, against Associated Life, Cal Life and others. It alleged breach of the duty of good faith and fair dealing as well as breach of various statutory duties. Alleging that their rights for further medically necessary treatment resulting from the accident had fully vested under the policy, appellants asserted that Associated Life was liable to them for full benefits under the policy.

Associated Life moved for judgment on the pleadings, arguing that appellants' action was preempted by the Employee Retirement Income Security Act. Appellants filed a motion for summary adjudication of issues. In turn, Associated Life filed a cross-motion for summary judgment. (Code Civ. Proc., § 437c.) It contended that Associated Life was relieved of all liability under the policy following the effective date of the reinsurance and assumption agreement. In support, Associated Life submitted a declaration of Ronald Rosen, deputy insurance commissioner. He stated that the reinsurance and assumption agreement "absolves Associated of liability for all claims incurred after its effective date, February 1, 1983, or any extension of that date reflected in said Agreement."

At a consolidated hearing on the motions, held on September 2, 1987, the court granted Associated Life's motion for summary judgment and, declaring all the remaining motions moot, placed them off calendar.

## DISCUSSION

Applying traditional "assignment of contract" principles, appellants contend that they did not consent to Associated Life's transfer of liability, therefore Associated Life is not relieved of its obligation to them. In addition, they assert that the Insurance Commissioner's approval of the reinsurance and assumption agreement cannot relieve Associated Life of its secondary liability as a surety or guarantor; and, in any event, because their right to coverage had vested, the assignment and reinsurance agreement has no effect on Associated Life's obligation to them. ■ ■ ■ ■ Appellants also seek reversal because Insurance Code section 1071.5 allows transfer only of an insurer's primary liability when withdrawing as an insurer in California; and, finally, the trial court did not specify what triable issues remained when it "denied" their motion for summary judgment.[3]

■ Resolution of this appeal requires us to rule on an issue of first impression, i.e., whether an insurance company, which withdraws from this state in response to a properly issued cease and desist order, is released from *all* future liability because of its execution of a reinsurance and assumption agreement.

■ Preliminarily, we note that since the question presented in this appeal is one of law, i.e., the meaning of Insurance Code section 1071.5, this court is not bound by the trial court's interpretation of this section's requirements; we bring our own independent judgment to bear. (*McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230, 1233-1234 [231 Cal.Rptr. 304].)

■ Seeking some guidance from statutory law, we looked to the legislative history of Insurance Code section 1071.5, footnote 2, *ante*,[4] only to discover that its passage in 1945 was uneventful, and its attendant reports are unenlightening on this issue. In addition, there is no case law interpreting any part of this statute, and there exists a paucity of cases anywhere which address the issue as we have framed it.[5]

---

[3] Respondents object to appellants' inclusion in the record and reliance upon correspondence between appellants' counsel and the chief counsel of the Department of Insurance. The chief counsel's letter offers an opinion regarding the scope of a cease and desist order. These letters are attached to the legislative history of Insurance Code section 1065.1. While we may take judicial notice of the legislative history of a particular statute (*Meyer* v. *Board of Trustees* (1961) 195 Cal.App.2d 420 [15 Cal.Rptr. 717]), we will not consider documents not before the trial court, as well as arguments based upon them; these are beyond the scope of appellate review. (*Pulver* v. *Avco Financial Services* (1986) 182 Cal.App.3d 622, 632 [227 Cal.Rptr. 491]; *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499 [125 Cal.Rptr. 872].)

[4] Hereinafter, all statutory references are to the Insurance Code unless otherwise indicated.

[5] We also researched the cases interpreting the reinsurance statutes, section 620 et seq. Section 620 defines a reinsurance contract as "one by which an insurer procures a third person to

Associated Life asserts that the declaration of the deputy commissioner of insurance stating that this section 1071.5 agreement "absolves Associated of liability for all claims incurred after its effective date. . ." is dispositive. ■ However, we remind Associated that the deputy commissioner is offering his opinion of what the law means. With all due respect to his authority, it simply does not encompass interpretation of law. Subject to review by the Supreme Court, we are the arbiters of what is meant by particular statutory language.

■ Section 1071.5 is silent regarding the extent of any continuing liability on the part of the withdrawing insurer. It is fairly obvious, however, that the statute was adopted to protect the rights of existing policyholders by requiring the withdrawing insurer to arrange coverage to continue their protection. ■ In addition, since this statute affects the rights of the insured, who is not a party to the agreement, it shall be narrowly construed. With these concepts in mind, we look to traditional contract principles to resolve this appeal.

Civil Code section 1457 provides: "The burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise . . . ." ■■ This section was enacted in 1872, and from its inception has been interpreted to mean that the assignor of the contract cannot be released from his/her burden of obligation to the other contracting party absent a novation. (*Cutting Pack. Co.* v. *Packers' Exch.* (1890) 86 Cal. 574, 576 [25 P. 52].) Throughout the years, our courts have interpreted this statute liberally and held that: " 'The obligations of an assignor of a contract continue to rest upon him and he will be required to respond to the other party to the contract in the event of a default on the part of the assignee. [Citations.]' " (*Wiseman* v. *Sklar* (1930) 104 Cal.App. 369, 374 [285 P. 1081].) ■ This principle is recognized and applied in assignment of insurance policies as well. (See 13A Appleman, Insurance Law & Practice (1976) § 7755.)

■ A default on the part of Cal Life is exactly what appellants suffered. By virtue of their participation in an employer group medical insurance plan, appellants contracted with Associated Life for medical insurance coverage. While this coverage was in full effect, Mr. Baer was injured, and Associated Life paid the claims submitted by appellants. Three months after the accident Associated Life terminated appellants' coverage

insure him against loss or liability by reason of such original insurance." Section 623 provides: "The original insured has no interest in a contract of reinsurance." The cases discussing these and subsequent related statutes speak to the liability of the reinsurer to the insurer and bear no relation to this appeal or to the reinsurance and assumption agreement created by section 1071.5.

but, pursuant to the terms of the policy, agreed to continue payment of benefits related to the accident for one more year. Mr. Baer was hospitalized within that one year period and incurred medical expenses in the amount of $50,000. In the interim, Associated Life and Cal Life entered into their agreement. Mr. Baer submitted his claims to Cal Life; Cal Life defaulted. Appellants sued Cal Life but have little or no chance for compensation since Cal Life has become insolvent. We hold that, consistent with Civil Code section 1457 and long-established case law, Associated Life remains liable to Mr. Baer.

■ "Novation is predicated on consent. [Citation.] [Appellants'] consent was not asked for. [Their] consent may not be implied where [they] had no opportunity not to consent." (*Prucha* v. *Guarantee Reserve Life Ins. Co.* (Fla.App. 1978) 358 So.2d 1155, 1157-1158.) ■ It simply is not within the power of an insurer, against the consent of the insured, to substitute another insurer in carrying out of its undertaking. (*American National Ins. Co.* v. *Briggs* (Tex.Civ.App. 1934) 70 S.W.2d 491, 494.) ■ Associated Life contends that appellants' submission of their claims to Cal Life is evidence of their approval of the reinsurance and assumption agreement. However, it is clear that appellants were given no meaningful or effective alternative. They had no opportunity to object to the agreement before it was executed and approved by the Insurance Commissioner. Faced with the need for continuing and extensive medical treatment, appellants had no choice but to submit their claims for payment of medical benefits to Cal Life. Their doing so does not reach the level of approval needed for us to find a novation.

Moreover, our research has revealed that traditional "assignment of contract" principles were being applied to insurance policies prior to enactment of this statute. (See *American National Ins. Co.* v. *Briggs, supra,* 70 S.W.2d at p. 494; 13A Appleman, Insurance Law & Practice, *supra,* § 7755.) Associated Life's position is predicated on section 1071.5 abrogating this common law practice. ■ Generally, where statutory and common law conflict, the statute will govern as the latest expression of law. (2A Sutherland Statutory Construction (4th ed. 1984) § 50.01, p. 421.) However, "Unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed so as to avoid conflict with common law rules. [Citations.]" (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509].) There is a presumption a statute does not, by implication, repeal the common law. (*Ibid.*) Section 1071.5 makes no mention of abrogating the extant application of assignment of contract principles, and we shall not read this implication into it.

■ This holding is especially appropriate where, as here, the original insurer continues to hold a certificate of authority allowing it to do certain

types of business in California. The cease and desist order did not include a requirement that Associated Life withdraw *completely* from California, and there is no indication in record that it has done so.[6]

The authors of section 1071.5 set out to protect California policyholders. They did not intend to create a statute which would leave California residents and insurance consumers without recourse in a situation such as that presented here.

The judgment is reversed. Costs on appeal are awarded to appellants.

Woods, P. J., and McClosky, J., concurred.

---

[6] Appellants request that we take judicial notice of Associated Life's certificate of authority as it is a matter of public record. We do so as appellants have filed a certified copy of this certificate in response to our order of May 4, 1988 (Evid. Code, §§ 450, 459).