**Michelle MIXON**

v.

**METROPOLITAN LIFE INS.**

**No. EDCV 04–688 JVS.**

United States District Court,
C.D. California.

Aug. 1, 2006.

904

Glenn R. Kantor, Kantor & Kantor, Northridge, CA, Russell G. Petti, Russell G. Petti Law Offices, La Canada, CA, for Plaintiff.

Eric R. McDonough, Seyfarth Shaw, Los Angeles, CA, Lawrence E. Butler, Seyfarth Shaw, San Francisco, CA, for Defendant.

SELNA, District Judge.

**Proceedings:** (In Chambers) Order Granting Judgment for Plaintiff for the Policy's Twenty-four Month "Own Occupation" Period

## I. *BACKGROUND*

The instant action involves a claim for long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff Michelle Mixon ("Mixon") contests the denial of her claim for LTD benefits, under a group insurance policy issued by defendant Metropolitan Life Insurance Company ("Met Life"). Mixon worked at Edfund from January 11, 2002 to July 7, 2003, when she was terminated. During her employment, Mixon was a participant in the Edfund LTD Plan (the "Plan"). Mixon worked as a Program Technician at Edfund, a sedentary position that involved the collection of overdue student loans. Mixon was an "at will" employee. Mixon suffers from Systemic Lupus Erythematosus ("SLE" or "lupus"). (Administrative Record ["AR"] at 413.)

For the following reasons, the Court finds that Met Life abused its discretion in denying Mixon her LTD benefits, and that she is entitled to such benefits for a period of twenty-four months.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ Met Life contends that the Court should review Met Life's decision to deny Mixon's LTD benefits under the abuse of discretion standard. (Met Life Br., p. 6.) Mixon, however, contends that the Court should review Met Life's decision *de novo.* For the following reasons, the Court applies the abuse of discretion standard.

In *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Technology, Inc.,* 125 F.3d 794, 797–99 (9th Cir.1997), the court conducted a thorough review of the standard of review that a court should employ when reviewing an ERISA plan administrator's decision to deny disability benefits. First, the court noted that "[w]hen an ERISA plan vests its administrator with discretion to determine eligibility for benefits and to construe the terms of the plan . . . the district court ordinarily reviews the administrator's determination for abuse of discretion." *Lang,* 125 F.3d at 797, *citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). It is uncontroverted that the Plan documents contain a full grant of discretion to Met Life. (AR 0729).

Second, the *Lang* court noted that this standard of review may be affected by factors such as conflict of interest. *Lang,* 125 F.3d at 797. The *Lang* court held that when an insurance company is both the funding source and the administrator of a plan there is "an inherent conflict of interest" which must be taken into account. *Id.* However, the court stated that "the presence of conflict does not automatically remove the deference we ordinarily accord to ERISA administrators who are authorized by the plan to interpret a plan's provisions." *Id.* The *Lang* court held that courts must "review the decisions of an apparently conflicted employer- or insurer-fiduciary under the traditional abuse of discretion standard unless it appears that the conflict may have influenced the decision." *Id.* at 798.

Further, the *Lang* court held that in order to demonstrate that a conflict actually influenced the decision of a plan ad-

ministrator, the "affected beneficiary must come forward with 'material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self interest caused a breach of the administrator's fiduciary obligations to the beneficiary.'" *Id.,citing Atwood v. Newmont Gold Co., Inc.,* 45 F.3d 1317, 1322 (9th Cir.1995). "If the beneficiary satisfies that burden, our review remains for abuse of discretion, but it becomes less deferential." *Id.* Moreover, if the affected beneficiary comes forward with material evidence of a violation of the plan administrator's fiduciary obligation, the plan then bears the burden of rebutting the presumption of a presumptively void decision by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. *Id.* If the plan fails to carry its burden, the court's review is *de novo,* without deference to the discretion of the administrator. *Id.*

In *Lang* the court held that the beneficiary had come forward with material evidence of a violation of the plan administrator's fiduciary obligation. *Id.* at 799. There the plan administrator originally denied the beneficiary benefits on the grounds that she did not have fibromyalgia. *Id.* "On review, when confronted with clear evidence from her treating physician that she did suffer from a physical ailment—fibromyalgia—[the plan administrator] took the position that [the beneficiary] would have to make a further showing that the fibromyalgia 'in and of itself' was disabling." *Id.* In addition, the plan administrator justified its denial on the theory that "regardless of the cause of the disability, the critical determinants of whether a person was afflicted with a 'mental disorder' were symptoms and not causes." *Id.* The *Lang* court concluded that the "inconsistencies in the reasons [that the plan administrator] gave for its refusals to lift

the 'mental disorder' limitation constitute material, probative evidence that its decision was affected by self-interest." *Id.* Finding that the plan administrator could not offer any evidence that its decision was in furtherance of its fiduciary responsibilities, the court reviewed the plan administrator's decision to deny the beneficiary her benefits *de novo. Id.*

■ In addition, failure to provide a "full and fair" appeals procedure as required by ERISA is material evidence of a violation of a plan administrator's fiduciary obligation. *Friedrich v. Intel Corp.,* 181 F.3d 1105, 1110 (9th Cir.1999). In *Friedrich,* the court held that the district court did not err in finding that "procedural irregularities in the initial claims process and an unfair appeals process . . . demonstrate [that the plan administrator's] apparent conflict of interest resulted in a breach of fiduciary duty." *Id.*

Met Life contends that "[t]he Administrative Record is devoid of any material, probative evidence supporting a claim that Met Life acted with a conflict of interest in deciding this claim . . ." (Met Life Br., p. 9.)

However, Mixon contends that Met Life's conduct of shifting the basis for denial after its original reason proved erroneous, constitutes a breach of duty. (Mixon Br., p. 14.) Specifically, Mixon contends "Met Life initially denied Ms. Mixon's claim on the shaky grounds that Ms. Mixon, while disabled, would recover from her lupus flare prior to the end of the elimination period." (*Id.,* p. 15.) Mixon further contends that when the basis for its denial was proven wrong by later events, "Met Life immediately shifted to a new and different basis for the denial, holding that it didn't matter whether Ms. Mixon was disabled, because she didn't have coverage under the Plan." (*Id.*) Mixon

avers that pursuant to *Lang,* changing the grounds for denial was sufficient, in and of itself, to justify lowering the standard of review. (*Id.*)

Met Life states that its finding on appeal that Mixon was not covered is not a sufficient basis on which to heighten the standard of review. (Met Life Opp'n, p. 3.) As Met Life contends, there is no rule that an ERISA administrator is estopped from invoking a different reason for denial on appeal than the administrator gave initially. (*Id.*) Further, the Court finds that the instant case is distinguishable from *Lang,* where the plan initially found that the beneficiary had a physical ailment, and then later made the beneficiary demonstrate that the ailment was disabling. *Lang,* 125 F.3d at 799.

Mixon additionally asserts that a separate and independent ground for reduction of the standard of review is Met Life's repeated violations of Department of Labor ("DOL") claims handing regulation. First, Mixon contends that Met Life violated DOL claims handling regulations because Met Life did not seek the advice of a qualified a health care profession with appropriate training and experience in the field of medicine involved the medical judgment. (Mixon Br., p. 16, citing 29 CFR 2560.503–1(h)(3)(iii), 29 CFR § 2560.503–1(h)(4).) Mixon contends that there is no evidence that Met Life's nurse practitioner had any training or experience in addressing an illness such as SLE. (Mixon Br., p. 16.) Second, Mixon contends that Met Life violated DOL regulations by failing to identify the nurse consultant, a medical consultant who worked on the file. (*Id.,* citing 29 CFR § 2560.503–(h)(3)(iv).)Bankr.Code

However, Met Life avers that because the denial of Mixon's appeal was only based on lack of coverage, Met Life did not rely on any "medical or vocational experts," as outlined in 29 C.F.R. § 2560.503–1(h)(3)(iv). (Met Life Opp'n, p. 3.) Met Life therefore contends that it was not under any obligation to provide the identification of the nurse consultant. (*Id.*)

The Court finds that pursuant to *Lang,* Mixon has not come forward with material probative evidence which demonstrates that Met Life's self-interest caused a breach of the administrator's fiduciary obligations to her. Therefore, the Court will not undertake a *de novo* review of the record. The Court finds that the standard of review in this case is for abuse of discretion.

B. *CALIFORNIA DEPARTMENT OF INSURANCE OPINION LETTER*

██ Mixon contends that the language granting discretion in Met Life's Summary Plan Description ("SPD") violates California Insurance Law. California Insurance Code § 10291.5 prohibits insurance policies issued in California from containing provisions that render contracts unsound, fraudulent or illusory. On February 26, 2004, the California Department of Insurance ("DOI") issued an opinion letter that discretionary clauses violate this provision by making the payment of benefits contingent on the unfettered discretion of the insurer.[1] (Request for Judicial Notice, Ex. A.)

However, the Court finds that the opinion letter is not binding on this Court, and carries no weight in the instant inquiry. As Met Life points out, the DOI only has jurisdiction over insurance policy forms, but the discretionary language at issue here is contained in a summary plan de-

---

1. The Court grants judicial notice of the opin-   ion letter pursuant to Fed.R.Evid. 201.

scription ("SPD"). (Met Life Opp'n, p. 6.) Further, as Met Life points out, the SPD is governed by federal law, and therefore state law is not applicable. 29 U.S.C. § 1029(c). Finally, as Met Life states, the opinion letter merely states the opinion of the insurance commissioner, and does not have the force of law. *Baer v. Associated Life Ins. Co.*, 202 Cal.App.3d 117, 123, 248 Cal.Rptr. 236 (1988).

## C. *THE EXISTENCE OF COVERAGE*

■ Mixon contends that her claim for disability benefits is covered under the Plan, Met Life disagrees.

Mixon contends that she became disabled on June 23, 2003. On June 24, 2003, Mixon saw her regular treating physician, Dr. Lo, who opined that she was too ill for work during the June 23–25 time frame. (AR at 336.) On June 26, 2006, Dr. Lo again saw Mixon and opined that she was too ill to work during the June 26–29 time frame. (AR at 335.) Dr. Lo additionally stated that Mixon could return to work on June 30, 2003. (AR at 335.) However, Dr. Lo later stated that Mixon was unable to work from June 30–July 3. (AR at 646.) On July 17, 2003, Dr. Lo again saw Mixon and found her disabled from July 7–July 31. (AR at 645.)

It is uncontroverted that Mixon was terminated on July 7, 2003. Mixon contends that she was terminated due to numerous absences caused by her medical condition. Met Life disagrees, contending that she did not stop working due to her purported condition. (Met Life Br., pp. 1, 9.)

The SPD issued to Mixon states that written notice of a claim must be given within the elimination period. (AR at 724.) The elimination period is "the number of consecutive days of Disability before Long Term Disability Benefits become payable under This Plan" and "begins on the first day of Disability." (AR at 719.) For the SPD at issue, the length of the elimination period is 180 days. (AR at 695.) Therefore, under the SPD, notice of a claim must be given within the first 180 days of the disability. As Mixon avers, a participant is not required to give notice of a claim for disability benefits prior to leaving work.

In addition, under the Plan, benefits end on the date employment ends, and employment ends when an employee ceases active work as an employee. (AR at 690.) Further, under the Plan, a claim cannot be denied for lack of coverage as long as the event triggering coverage took place while the employee was still covered under the plan. (AR at 725.)

On August 1, 2003, Mixon notified Met Life that she was going to seek disability benefits. According to Mixon's August 20, 2003 claim form, her disability began on June 23, 2003, and her last day of work was July 7, 2003. (AR 055). Mixon's claim was supported by an Attending Physician Statement by Dr. Weisner. Dr. Weisner indicated that he advised Mixon to stop working on June 23, 2003. (AR 402–403.)

As detailed below, on October 21, 2003 Met Life denied Mixon's claim for benefits based on the reviewing physician's belief that Mixon would recover and be able to return to work. On November 20, 2003, Mixon submitted an appeal which was later denied by Met Life. In its letter upholding its denial of benefits to Mixon, Met Life found that Mixon was fired on July 7, 2003, and concluded that there was no coverage for Mixon's claim. (AR at 690.) Met Life's uphold letter states that Mixon indicated that she ceased work due to a disability on July 8, 2003, and that her Long–Term Disability claim was received

by Met Life on August 1, 2003. (AR at 690.)

As Mixon contends, Met Life appears to have concluded that the first day of Mixon's disability way July 8, 2003, and that having been fired the day before, she was no longer actively at work, and therefore not eligible for disability benefits. (Mixon, p. 9.) Mixon contends that nothing in the record indicates that Mixon's disability did not begin until July 8, 2003. Mixon avers that her medical records indicate that she struggled with her condition throughout June of 2003, and that the date of disability given by both herself and her treating physician was June 23, 2003. (*Id.*) The Court agrees. The Court finds that there is no evidence in the record to indicate why Met Life states that Mixon's disability began on July 8, 2003, one day after she was terminated from her job.

In sum, Mixon contends that her disability began on June 23, 2003, during which time she was an employee, and therefore covered under the Plan. Mixon was fired on July 7, 2003. Mixon avers that she notified Met Life of her claim well within the 180 day elimination period, on August 1, 2003. Mixon therefore avers that she was covered when the disability occurred, notified Met Life within the relevant time period, and is entitled to benefits.

Met Life, however, avers that Mixon was terminated before she allegedly stopped working due to her purported disability, and therefore she is not covered under the Plan. (Met Life Br., p. 2.) Met Life specifically contends that "[t]he records that Met Life received did not indicate that [Mixon] was disabled either at her date of termination or as of the date that LTD benefits would have begun, approximately December 23, 2003." (*Id.*, p. 9.) The Court finds no evidence in the record to support this contention.

Met Life further argues in its Opposition that Mixon arbitrarily named June 23, 2003 as her disability start date. (Met Life Opp'n, pp. 4, 9.) Met Life argues that Mixon's "alleged disability date of June 23, 2003 does not comport with the fact that [Mixon] went to work on July 7, 2003." (*Id.*, p. 4.) Met Life contends that Mixon left Edfund on July 7, 2003 because she was terminated, not because she was disabled. (*Id.*, p. 10.) Given the medical evidence both before and after July 7, 2003, Met Life abused its discretion in denying coverage on the basis that Mixon went to work on July 7, 2003. The fact that she was physically at work does not refute the fact that she was disabled on that date—and earlier.

The Court finds that the medical records submitted by Mixon support her contention that she became disabled on June 23, 2003. Met Life has failed to point the Court to any evidence which demonstrates, or even tends to show, that Mixon became disabled on July 8, 2003, a mere twenty-four hours after she was terminated from her employment. Therefore the Court finds that Mixon was covered by the Plan at the time she purportedly became disabled.

The Court notes that another reading of the uphold letter is that Mixon is purportedly not eligible for disability benefits because her claim for disability was received on August 1, 2003, while Mixon was fired on July 7, 2003. By this reading, Met Life appears to contend that Mixon's claim for disability benefits was tardy. However, Met Life concedes in its Opposition that "Met Life does not dispute that it received [Mixon]'s disability claim on August 1, 2003, within the time allowed by the Plan. Met Life has never raised late notice as a defense." (Met Life Opp'n, p. 10.)

For the reasons discussed in depth below, the Court finds that Mixon is entitled

to benefits for the first twenty-four months of her disability.

### D. *EXHAUSTION OF ADMINISTRATIVE REMEDIES*

■ Met Life additionally contends that because Mixon did not appeal Met Life's determination that she was not eligible for Plan benefits due to lack of coverage, she failed to exhaust her administrative remedies at to that issue before filing this lawsuit. (Met Life Br., p. 9, *citing Diaz v. United Agricultural Employee Welfare Benefit Plan And Trust,* 50 F.3d 1478, 1483 (9th Cir.1995)).

■ Mixon, however, avers that while the Plan requires that a claimant appeal from an adverse decision, the Plan does not require that if Met Life changes its basis for denial, the claimant is required to appeal a second time. (AR at 729). Further, as Mixon points out, while a litigant generally must exhaust administrative remedies, that is not a jurisdictional requirement, and the district court therefore has discretion whether to allow the lawsuit to proceed. *Diaz v. United Agr. Employee Welfare Ben. Plan and Trust,* 50 F.3d 1478, 1483 (9th Cir.1995).

The Court finds that Mixon properly appealed Met Life's initial denial, and is not required to do more because Met Life changed the basis of its denial.

### E. *EXISTENCE OF A DISABILITY*

■ Mixon contends that she is disabled under the terms of the Plan, Met Life disagrees. For the following reasons, the Court finds that Mixon is disabled under the terms of the Plan.

The Plan defines "Disability" as follows:

Due to an injury or sickness, you require the regular care and attendance of a doctor and:

1. you are unable to perform each of the material duties of your regular job; and

2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings; . . .

(AR at 718–719.)

As stated, Mixon's August 20, 2003 claim for disability benefits was supported by an Attending Physician Statement by Dr. Wiesner. Dr. Wiesner indicated that Mixon suffered from lupus, joint pain, fatigue, rash and fever. (AR at 069). Dr. Wiesner further indicated that he did not expect that Mixon would be able to return to work because of her SLE. (AR at 070). Dr. Wiesner stated that he advised Mixon to stop working on June 23, 2003. (AR at 402). Dr. Wiesner's records consist in large part of lab results which support the diagnosis of lupus, and office notes describing her symptoms.

Dr. R. Kevin Smith, an Independent Physician Consultant ("IPC"), made a medical review of Mixon's file for Met Life. (AR at 94–96.) Mixon states that Dr. Smith is an D.O. (Doctor of Osteopath), not an M.D., and has no known experience with SLE. (AR at 96.) Met Life states that Dr. Smith is Board Certified in Preventative Medicine or Occupational Medicine. The Court finds that Dr. Smith is sufficiently qualified to render an opinion on Mixon's case.

On September 26, 2003, Dr. Smith found that Mixon's medical records were consistent with a diagnosis of SLE. Specifically, Dr. Smith stated that Mixon did have SLE, which "necessitated time off work and persisted through the 8/22/03 examination." (AR at 095.) However, Dr. Smith found that Mixon was not qualified for

disability benefits because he expected her to get better by the time the elimination period ran in January, 2004. (AR at 096.) Dr. Smith concluded that "[t]he level of treatment does not indicate an advanced form of [lupus] as it appears to be controlled by [Mixon's medications.]" (AR at 096.)

On October 21, 2003, Met Life denied Mixon's claim based on Dr. Smith's opinion that Mixon would be able to return to work by November 1, 2003, which was well before the satisfaction of the 180 day waiting period for eligibility for LTD benefits. (AR at 100). As Mixon points out, nothing in the letter indicated that Mixon did not have coverage for her claim.

Met Life now contends that nothing in Dr. Wiesner's records, and specifically nothing in his office notes, explains why Mixon's diagnosis prevented her from performing her sedentary occupation. (Met Life Br., p. 4.) However, that is not what Met Life stated in its denial letter. Met Life denied Mixon's claim based on the theory that she would get better, not that the records failed to indicate why she could not perform her occupation. (AR at 100.)

Mixon contends that Dr. Smith provided no support for his conclusion that he expected Mixon to get better, other than that he had limited medical information, was unable to speak with Dr. Wiesner, and from her treatment he did not think that Mixon's SLE was "advanced." (AR at 096.) The Court agrees.

On November 20, 2003, Mixon submitted an appeal. (AR at 104.) On April 30, 2004, Mixon submitted a written report by Dr. Wiesner in which he stated that "[b]ased on my clinical evaluation of this patient, I believe that her [SLE] remains active and that she is not fit to return to her usual customary job ... I continue to stand by my original assessment that this woman remains clinically disabled from gainful employment." (AR at 390.) Mixon therefore contends that Dr. Wiesner's updated medical records show that Mixon did not recover. The Court agrees.

Met Life sent Mixon's additional documentation for a review by one of Met Life's nurse consultants. (AR at 031.) As Mixon points out, this nurse consultant is not identified in the file, and therefore her qualifications are not known. As discussed above, Mixon contends that Met Life has therefore violated ERISA's governing regulations.

In response to Dr. Wiesner's additional documentation, Met Life now avers that Dr. Wiesner "did not provide any evidence or explanation of how [Mixon]'s diagnosis prevented her from performing her occupation." (Met Life Br., p. 5, citing AR at 688–689.) The Court disagrees. In addition, in Met Life's uphold letter, Met Life did not reiterate its prior conclusion that Mixon was not entitled to benefits because it expected her to get better, and did not address Dr. Wiesner's report or any of the new medical evidence provided by Mixon. (AR at 690.) As detailed above, Met Life's uphold letter focused on the issue of coverage, a new ground for denial of benefits. Neither Met Life's original denial, nor its uphold letter indicated that Met Life believed that Dr. Wiesner did not sufficiently explain why Mixon's diagnosis prevented her from performing her occupation.

In sum, Mixon contends, and the Court agrees, that the medical records indicate that she was and is disabled under the terms of the Plan, and that neither the review by Dr. Smith nor the nurse practitioner indicates that Mixon was able to work. (Mixon Opp'n, p. 9.)

## F. *MET LIFE'S PURPORTED NEW ARGUMENT*

■ In her Opposition, Mixon argues that under ERISA Met Life should be

limited to arguing only those basis for denial set forth in the final denial letter. (Mixon Opp'n, p. 9.) As Mixon points out, pursuant to 29 U.S.C. § 1133, an employee benefit plan must set forth the specific reasons for denial of benefits. Further, pursuant to 29 CFR § 2560.503–1, an employee benefit plan must set forth the specific reason(s) for an adverse benefit determination. In addition, as Mixon points out, in *Booton v. Lockheed Medical Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir.1997), the court held than an ERISA plan administrator must set forth the reason for denial "with specific reference to the plan provisions that form the basis for the denial." In *Jebian v. Hewlett–Packard Co. Employee Ben. Organization Income Protection Plan*, 349 F.3d 1098, 1104–05 (9th Cir.2003), the court found than a plan administrator is limited to reasons asserted for denial during the claim process, to prevent the plan from sand bagging the claimant "by a rationale the plan administrator adduces only after the suit has commenced."

To the extent that Mixon contends that Met Life's statement that there is "no explanation regarding how [Mixon's] diagnoses prevented her from performing her job" is a new argument, the Court agrees.

Mixon contends that because Met Life denied Mixon's claim by stating that it expected her to recover, Dr. Wesiner responded only by explaining that Mixon had not recovered. (Mixon Opp'n, p. 12.) Mixon contends that Met Life did not question whether the medical records provided support for her claim that she was unable to work, and therefore Dr. Wiesner only addressed the small issue of whether she had recovered in her appeal. (*Id.*) Mixon avers that therefore Met Life cannot complain that Dr. Wiesner did not specifically address what it was about her symptoms that purportedly made it impossible for her to work. (*Id.*) The Court agrees with these contentions.

The Court notes that Met Life's uphold letter only addressed the issue of whether Mixon was covered under the policy at the time of the alleged disability, not whether she was or is in fact disabled. Further, Met Life admits in its Opposition that "[i]t is not disputed that [Mixon] was diagnosed with and experienced symptoms consistent with [SLE]." (Met Life Opp'n, p. 1.)

The Court finds that Met Life's initial denial letter implicitly acknowledges that Mixon was disabled and unable to perform her job. As stated, Met Life's reason for denial was that it believed that Mixon would recover and be able to perform her job. This acknowledges that Mixon had a disability from which she needed to recover in order to be able to return to work. Therefore, the Court finds that Met Life has already determined that Mixon was disabled under the terms of the Plan. To the extent that Met Life now contends that Mixon was not totally disabled, the Court finds that that argument is a new argument advanced for the first time during litigation, which the Court will therefore not consider.

### G. *PERIOD FOR WHICH BENEFITS ARE OWED*

■ Met Life contends that because Mixon only submitted medical records through April 30, 2004, she is entitled to benefits only until that date. The Court disagrees. The Court finds that *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24 (1st Cir.2003), is directly on point. The *Cook* court first noted that courts have equitable powers to fashion appropriate relief where an ERISA plan has improperly denied benefits:

Liberty cites the familiar proposition that ERISA provides no authority for a court to render a de novo determination

of an employee's eligibility for benefits in support of its argument that the district court could not award Cook retroactive benefits. Important though it is in many other contexts, this axiom underlying the principle of ERISA deference does not deprive a court of discretion to formulate a necessary remedy when it determines that the plan has acted inappropriately.

*Cook,* 320 F.3d at 24. In *Cook* the insurer argued that the Administrative Record did not contain updated medical records, and that without such records, it did not possession evidence on which to pay currently owed benefits. The same argument that Met Life proffers in this case. The *Cook* court noted: "Liberty argues that there is no evidence of Cook's disability status after October 1998, when it terminated her disability benefits, and hence no basis for awarding her disability benefits past that date." *Id.* at 24–5. However, the *Cook* court rejected that argument, noting that the insurer's improper denial of benefits was the direct cause of the absence of current medical records in the file:

> [T]he absence of information about Cook's disability status resulted directly from Liberty's arbitrary and capricious termination of her benefits. As a recipient of disability benefits, Cook was under a continuing obligation to adduce proof of her disability pursuant to the long-term disability plan. Once Liberty terminated her benefits, she was no longer obliged to update Liberty on her health status.

*Cook,* 320 F.3d at 24. The *Cook* court concluded:

> It would be patently unfair to hold that an ERISA plaintiff has a continuing responsibility to update her former insurance company and the court on her disability during the pendency of her internal appeals and litigation, on the off chance that she might prevail in her lawsuit. Moreover, as the district court notes in its decision, reconstruction of the evidence of disability during the years of litigation could be difficult for a recipient of long-term disability benefits wrongly terminated from a plan.

*Id.* at 24–5. Here Met Life's arbitrary and capricious denial of Mixon's benefits is the reason that Mixon has not updated her medical records since April 20, 2004. Once Met Life terminated Mixon's health benefits she was no longer under an obligation to update Met Life on her health status. Met Life has acted inappropriately, and it is within this Court's discretion to formulate an appropriate remedy. In this case the appropriate remedy is to grant Mixon her LTD benefits for the policy's twenty-four month "own occupation" period.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Met Life abused its discretion in denying Mixon LTD benefits.

It is clear to the Court, and the Court believes that it was clear to Met Life, that Mixon was disabled under the terms of the Plan. Met Life initially denied Mixon's benefits because it believed that she would recover, not because it believed that she was not disabled. When Mixon appealed, and submitted evidence to show that she had not recovered, Met Life denied her claim on the grounds of lack of coverage, not the absence of a disability.

Further, it is clear to the Court that Mixon was covered under the Plan at the time her disability began. The medical records indicate that Mixon's disability began on June 23, 2003, and she was fired on July 7, 2003.

For these reasons, the Court finds the Mixon is entitled to her LTD benefits for the policy's twenty-four month "own occu-

pation" period. Counsel for Mixon shall prepare, serve and lodge, forthwith, a proposed judgment consistent with the Court's ruling.