Filed 7/20/23  Dhillon v. State Bank of India CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RANDEEP S. DHILLON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>STATE BANK OF INDIA (CALIFORNIA),<br><br>Defendant and Respondent. | F083964<br><br>(Super. Ct. No. BCV-19-101602)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Law Office of Forrest R. Miller, Forrest R. Miller; Law Office of Reshma Kamath and Reshma Kamath for Plaintiff and Appellant.

Enenstein Pham & Glass, Teri T. Pham and Alvaro Montenegro for Defendant and Respondent.

-ooOoo-

This is the companion case to *Dhillon v. State Bank of India* (*California*) (June 28, 2023, F083456) [nonpub. opn.], in which we affirmed the trial court's grant of summary judgment in favor of defendant and respondent State Bank of India (California) (SBIC) on plaintiff Randeep Dhillon's claims for fraud and intentional misrepresentation, breach

of contract, breach of the implied covenant of good faith and fair dealing, unfair and deceptive business practices, unjust enrichment, and accounting. Here, Dhillon appeals from a postjudgment order awarding costs and attorney fees to SBIC. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Dhillon purchased a pistachio farm in 2006 and financed part of the purchase price by obtaining a $2.160 million loan from SBIC. In November 2007, Dhillon refinanced the SBIC loan by taking out a $4.626 million loan from SBIC (the 2007 Loan); he signed a promissory note in that amount secured by a deed of trust to be recorded on the property. Dhillon also executed a security agreement, which granted SBIC a security interest in Dhillon's personal property.

The promissory note contained the following attorney fees provision: "Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law."

Similarly, the deed of trust provided: "If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees

2.

and Lender's legal expenses, whether or not there is a lawsuit …. Trustor also will pay any court costs, in addition to all other sums provided by law."[1]

Following a default, Dhillon entered into a forbearance and settlement agreement with SBIC in October 2011. Dhillon and SBIC entered into a change in terms agreement in January 2014.

### *The Underlying Litigations*

In December 2016, SBIC filed a verified complaint against Dhillon to judicially foreclose on the property (the foreclosure action). That month, SBIC sold and assigned all its interests in the 2007 Loan to Joseph P. Romance; Romance subsequently substituted into the foreclosure action as plaintiff in SBIC's place. In February 2017, Romance nonjudicially foreclosed on the property and recorded a trustee's deed upon sale. In April 2017, Romance filed a first amended complaint in the foreclosure action, substituting a cause of action for foreclosure of the personal property collateral in place of the claim for judicial foreclosure. The trial court subsequently granted Romance's motion for summary judgment and judgment was entered in Romance's favor and against Dhillon in the amount of $278,417.77.

Dhillon filed this action against SBIC in June 2019, asserting claims for, among other things, breach of contract and fraud. In March 2021, SBIC filed a motion for summary judgment. After multiple continuances and additional briefing, the trial court

---

[1] The security agreement also contained the following attorney fees clause: "Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court."

granted summary judgment in SBIC's favor on all of Dhillon's claims on grounds of res judicata and collateral estoppel. In September 2021, judgment was entered in SBIC's favor and against Dhillon, and notice of entry of judgment was served on all parties on October 27, 2021.

***The Attorney Fees Motion***

SBIC filed a motion for attorney fees and costs. SBIC contended it was entitled to attorney fees under the attorney fees provisions in the 2007 Loan contracts because: (1) Dhillon's action was "on a contract" within the meaning of Civil Code[2] section 1717 since the action "entirely 'arises out of, is based upon, and/or relates' to the parties' contractual relationship" under the 2007 Loan contracts, and the parties' performance and conduct under those agreements; (2) the 2007 Loan contracts contained attorney fee provisions relating to enforcement of the 2007 Loan; and (3) it was the prevailing party in Dhillon's action.

SBIC submitted its attorney's declaration in support of the motion. The attorney stated SBIC incurred $125,350 in attorney fees, which reflected 342.5 hours of work by attorneys at the law firm at an hourly rate of $270 for associates, $450 for senior associates, and $500 and $490 for partners. SBIC also sought $4,751.68 in costs. SBIC asserted it was entitled to the full amount of the claimed fees and costs because they were reasonable considering the litigation.

In opposing the motion, Dhillon argued SBIC was not entitled to attorney fees under section 1717 because: (1) SBIC ceased to be a party to the agreements when it assigned its rights to the 2007 Loan contracts to Romance in December 2016; (2) while section 1717's reciprocity principles may apply in actions between parties and nonparties to a contract, SBIC did not stand in the place of a party to the agreements and was not a

---

[2]      Undesignated statutory references are to the Civil Code.

4.

third-party beneficiary; and (3) nothing in the 2007 Loan contracts contemplated SBIC retaining the right to recover attorney fees postassignment.

Dhillon contended his lawsuit against SBIC was not on a contract because he was not seeking to void, enforce, or stop enforcement of a contract; rather, his case was for damages grounded in SBIC's fraudulent conduct. Dhillon asserted the attorney fees provisions were limited to actions by the lender relating to collection of the amounts due and did not contemplate independent claims for fraud. Finally, Dhillon asserted he was not judicially estopped from challenging SBIC's claim for contractual attorney fees simply because he sought attorney fees in his second amended complaint. Dhillon did not challenge the amount of the requested fees or SBIC's entitlement to the claimed costs.

In reply, SBIC argued its assignment of its interests under the 2007 Loan did not extinguish its commitments under the contracts; therefore, when Dhillon sued SBIC for breach of those contracts, the attorney fees provisions still applied and would have governed Dhillon had he prevailed in the action. SBIC further argued that even if it became a nonsignatory to the 2007 Loan contacts by virtue of its assignment to Romance, it was entitled to attorney fees under section 1717 because it would have been liable for Dhillon's attorney fees had he prevailed.

As for Dhillon's claim that his lawsuit was based on fraud, SBIC asserted the action was on a contract under section 1717 because Dhillon's complaint included claims for breach of contract, and he sought damages based on SBIC's conduct under the loan and the enforcement mechanisms under the written contracts. Finally, SBIC contended the language of the attorney fees provisions in the various contracts showed attorney fees were warranted in connection with any action related to enforcement of the loan, including Dhillon's action to avoid the consequences of enforcement, and the gravamen of his claims sought damages against SBIC for its enforcement of Dhillon's loan obligations, including billing and foreclosure proceedings.

5.

After a hearing on the motion, the trial court entered an order granting the motion in its entirety. The judgment was amended to include an award to SBIC of $125,350 in attorney fees and $4,751.68 in costs.

## DISCUSSION

*General Legal Principles Governing Attorney Fee Awards*

Generally, "[e]ach party to a lawsuit must pay his or her own attorney fees except where a statute or contract provides otherwise." (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 966 (*Cargill*); Code Civ. Proc., § 1021.) Where a contract provides for an award of attorney fees in an action on the contract, the reciprocity provisions of section 1717 allow for recovery of fees by whichever party prevails in an action on the contract, regardless of whether the contract specifies that party. (§ 1717, subd. (a); *Cargill*, at p. 966; *Milman v. Shukhat* (1994) 22 Cal.App.4th 538, 543–545; *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342.)

"Tort and other noncontract claims are not subject to section 1717 and its reciprocity principles." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 820 (*Brown Bark*).) The contracting parties, however, may agree to a broader attorney fees provision which permits recovery of fees in both contract and noncontract actions. (*Xuereb v. Marcus & Millichap, Inc.*, *supra*, 3 Cal.App.4th at pp. 1342–1343 [provision for payment of fees in a " 'lawsuit or other legal proceeding' to which 'this Agreement gives rise' " allowed for recovery of fees in tort action].)

Absent contractual language providing otherwise, a contract providing for attorney fees to be awarded to a contracting party does not typically apply to a nonsignatory party. (See *Cargill*, *supra*, 201 Cal.App.4th at pp. 966, 968–969.) However, a nonsignatory party may be entitled to contractual attorney fees for litigation in which "the nonsignatory party 'stands in the shoes of a party to the contract.' " (*Id.* at p. 966.) That is, if the nonsignatory party sues or is sued "as if he were a party" to the contract containing the attorney fees provision, the prevailing party may be entitled to an award of fees.

6.

(*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127–128 (*Reynolds*) [nonsignatory party who was sued as alter ego of signatory party entitled to contractual attorney fees]; *Exarhos v. Exarhos* (2008) 159 Cal.App.4th 898, 900, 903–908 [nonsignatory party who sued as deceased contracting party's successor in interest required to pay contractual attorney fees]; *California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 601, 608 [nonsignatory party who brought action based on assignment of contract rights from signatory party required to pay contractual attorney fees].)

"Accordingly, to invoke section 1717 and its reciprocity principles a party must show (1) he or she was sued on a contract containing an attorney fee provision; (2) he or she prevailed on the contract claims; and (3) the opponent would have been entitled to recover attorney fees had the opponent prevailed." (*Brown Bark*, *supra*, 219 Cal.App.4th at p. 820.)

On appeal, we review de novo the question of whether there is a legal basis to award attorney fees. (*Cargill*, *supra*, 201 Cal.App.4th at p. 966.)

***The Summary Judgment Motion***

As a threshold matter, we note that in his opening and reply briefs, Dhillon reprises arguments he made in his appeal on the summary judgment motion. He challenges the propriety of the trial court's order granting SBIC's summary judgment motion, contending, among other things, the use of res judicata or collateral estoppel as the legal predicate for awarding attorney fees was error because SBIC waived the defense. But we have disposed of these arguments in the prior appeal, *Dhillon v. State Bank of India (California)*, *supra*, F083456, in which we affirmed the grant of summary judgment. As such, the arguments are beyond the scope of this appeal, which only concerns the award of attorney fees. (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 727 ["the reconsideration of a prior appeal is ordinarily precluded by the law-of-the-case doctrine"].)

***Dhillon's Action Was on a Contract***

We first address Dhillon's claim that SBIC was not sued on a contract containing an attorney fee provision. Dhillon asserts his complaint was not one to void, enforce, or stop enforcement of a contract, but rather an action for damages grounded in SBIC's purportedly fraudulent conduct. Citing the principle that section 1717 does not apply to tort claims unless the contractual attorney fees provision so provides, Dhillon argues the attorney fee provisions in the contracts are limited to collection actions by the lender and do not contemplate independent claims for fraud.

The term "on a contract" must be construed liberally. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 240.) It is not limited to a lawsuit seeking damages for breach of contract but includes any action that " 'involves' " a contract "in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement." (*Id.* at pp. 240, 241–242.) The basis of the cause of action, not the remedy, is the correct focus in determining whether an action is on a contract within the meaning of section 1717. (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, at p. 241.)

"To determine whether an action is on the contract, we look to the complaint and focus on the basis of the cause of action. [Citations.] Any action that is based on a contract is an action on that contract regardless of the relief sought." (*Brown Bark*, *supra*, 219 Cal.App.4th at p. 821.) Our Supreme Court has held that section 1717 applies only to actions that contain at least one contract claim. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 615.) "If an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims." (*Ibid.*) It is unnecessary to apportion attorney fees, however, when they are "incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds*, *supra*, 25 Cal.3d at pp. 129–130.)

8.

Here, while the operative second amended complaint alleged tort and noncontract claims for fraud/intentional misrepresentation, deceptive business practices, unjust enrichment, and accounting, it also alleged claims for breach of contract and breach of the implied covenant of good faith and fair dealing.[3] Specifically, the breach of contract claim alleged SBIC breached provisions of the note and deed of trust that set forth the due date for monthly principal and interest payments and when late fees could be assessed, and required payments to be properly applied, by (1) failing to keep an accurate accounting, (2) sending Dhillon inaccurate billing and account statements, (3) failing to apply Dhillon's payments, and (4) sending Dhillon an "Authorization to Bid at Foreclosure Sale," which led to his property being foreclosed upon. The complaint further alleged these acts breached the implied covenant of good faith and fair dealing. (*Schoolcraft v. Ross* (1978) 81 Cal.App.3d 75, 82 [§ 1717 applicable to claim for breach of implied covenant of good faith and fair dealing].)

As the complaint clearly alleged breach of contract claims, the action was "on a contract" within the meaning of section 1717. We recognize Dhillon also asserted tort and noncontract claims, which generally would require the trial court to apportion the attorney fees. It is unnecessary to apportion attorney fees, however, when they are "incurred for representation on an issue common to" contract and noncontract claims. (*Reynolds*, *supra*, 25 Cal.3d at pp. 129–130.) "The governing standard is whether the 'issues are so interrelated that it would have been impossible to separate them into claims

---

**3**     On our own motion, we take judicial notice of the second amended complaint located at pages 19 through 131 of the clerk's transcript in the companion case, *Dhillon v. State Bank of India* (*California*), *supra*, F083456. (Evid. Code, §§ 452, subd. (d) & 459, subd. (b).) While SBIC's motion for attorney fees relied on the second amended complaint, Dhillon did not designate the second amended complaint as part of the record in this appeal or ask us to take judicial notice of it. Both Dhillon and SBIC, however, cite to the second amended complaint in their appellate briefs. As the parties rely on the same document in support of their appellate contentions, it is necessary for us to take judicial notice of that document.

9.

for which attorney fees are properly awarded and claims for which they are not ….' " (*Brown Bark*, *supra*, 219 Cal.App.4th at pp. 829–830.)

Here, the trial court did not apportion the attorney fees between contract and noncontract claims. The allocation of fees between contract and noncontract causes of action is a matter within the trial court's discretion. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1604.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.)

This entire matter hinged on Dhillon's dispute about SBIC's accounting and billing practices with respect to the 2007 Loan. Although various tort and noncontract claims were alleged in the second amended complaint, those claims simply recast the competing contract claims. For example, Dhillon's claim for fraud and intentional misrepresentation was based on SBIC's alleged failure to properly (1) credit Dhillon's payments, (2) calculate payments and balances, and (3) maintain its accounts and books. These are the same acts that form the basis of the breach of contract claims. We are satisfied the trial court reasonably could find the noncontract claims were so intertwined that it would be "impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.)[4]

Since the trial court was not required to apportion attorney fees between the contract and noncontract claims, it is irrelevant whether the attorney fees provision in any of the applicable contracts provided for the recovery of attorney fees for fraud claims. Dhillon asserts the attorney fees provisions were limited to collection actions by the lender. The attorney fees provision in the promissory note was one-sided—conferring

---

[4] Dhillon concedes in his reply brief that it "would have been impossible to determine fees recoverable pursuant to the contract and pursuant to Dhillon's fraud claims."

upon the lender the right to seek an award of attorney fees incurred "to help collect this Note if Borrower does not pay." Section 1717, subdivision (a), however, makes the remedy mutual as to Dhillon and because there is no evidence, nor any notation, in the promissory note that he was represented by counsel in negotiating the promissory note, the "provision shall be construed as applying to the entire contract." (§ 1717, subd. (a); *Reyes v. Beneficial State Bank* (2022) 76 Cal.App.5th 596, 617.) "Thus, the provision is not limited to fees incurred in collection efforts." (*Reyes v. Beneficial State Bank*, at p. 617.)[5]

In sum, it is clear SBIC was sued on a contract, namely, the promissory note, that contained an attorney fees provision, SBIC prevailed on both the contract and noncontract claims, and the trial court acted reasonably in declining to apportion the fees between the contract and fraud claims.

***Dhillon Would Have Been Entitled to Attorney Fees Had He Prevailed***

This leaves the issue of whether Dhillon would have been entitled to attorney fees had he prevailed on his contract claims against SBIC. Dhillon does not contend that he would not have been entitled to fees had he prevailed; rather, he argues SBIC is not entitled to attorney fees because it assigned all its rights under the 2007 Loan contracts to Romance in December 2016, including the right to claim attorney fees under them, and thereby "effectively ceased to be a party to the contracts." While Dhillon recognizes

---

**5**     Dhillon asserts an attorney fee provision in a deed of trust is not considered contract fees under section 1717. We recognize appellate courts have held attorney fees provisions in deeds of trust which provide that any attorney fees incurred in protecting the lender's interest in the property will become additional debt secured by the deed of trust do not authorize a separate fee award under section 1717 and instead only allows fees to be added to the outstanding balance due under the promissory note. (*Chacker v. JPMorgan Chase Bank, N.A.* (2018) 27 Cal.App.5th 351, 356–359; *Hart v. Clear Recon Corp.* (2018) 27 Cal.App.5th 322, 327–329.) While the 2007 deed of trust contains similar language, we need not decide whether attorney fees are available under the deed of trust's attorney fee provision, as attorney fees are available under the promissory note's attorney fees provision.

nonparties to a contract may recover contractual attorney fees in certain situations, he asserts none of those situations apply to SBIC.

Clearly, Dhillon would have been entitled to fees had he prevailed on his breach of contract claim. Dhillon sued SBIC for breach of the promissory note alleging SBIC failed to keep accurate accounts and sent him inaccurate statements. To prevail, he would have to show that SBIC remained liable for these preassignment acts.[6] (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1289 [assignment of rights under executory contract does not impose assignor's obligations on assignee unless the assignee assumes those obligations; assumption of obligations, however, may be implied from acceptance of contract's benefits]; *Baer v. Associated Life Ins. Co.* (1988) 202 Cal.App.3d 117, 123 [absent a novation, assignor not released from obligation to other contracting party and assignor must respond if assignee defaults].)

Since Dhillon based his claim against SBIC on SBIC's obligations under the promissory note, had he prevailed, his recovery would have been on the contract and would have included attorney fees pursuant to the promissory note's attorney fee provision. SBIC, however, successfully defended itself and therefore is entitled to attorney fees as the prevailing party. (See, e.g., *Berge v. International Harvester Co.* (1983) 142 Cal.App.3d 152, 164 [truck buyer who successfully defended against assignor of sales contract's claim for recovery of sums expended in repossessing the truck entitled to attorney fees from assignor under attorney fee provision in sales contract; assignor was a party to the contract and would have been entitled to fees had it prevailed].)

---

**6** Although SBIC asserted in its motion that it "sold and assigned all of its interests in the 2007 Loan" to Romance, the assignment was not provided with the motion and is not in the appellate record. The motion cites to exhibit 4 to the second amended complaint in support of the assertion that SBIC assigned its interests to Romance, but that exhibit does not include the assignment.

SBIC's assignment of the promissory note to Romance does not change this analysis. "Civil Code section 1717 covers signatories to a contract containing a fee provision and those who are sued as alleged parties to the contract or otherwise alleged to be bound by its terms." (*Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 307.) Regardless of whether SBIC remained a signatory to the contract after the assignment, it is enough that Dhillon sued SBIC, the original party to the promissory note, and alleged it breached the note and its implied covenant of good faith and fair dealing. If Dhillon had prevailed on his contract claims against SBIC because it remained obligated on the note, he would have been entitled to recover his attorney fees from SBIC. To fulfill the primary purpose of section 1717, namely, "to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions" (*Santisas v. Goodin*, *supra*, 17 Cal.4th at p. 610), SBIC, as the prevailing party on Dhillon's contract claims, is entitled to recover its attorney fees from Dhillon.

Dhillon asserts there is no authority an assignor has continuing rights in a contract it has assigned. But this misses the point. Dhillon sued SBIC for its preassignment conduct that he alleged was in breach of the promissory note to which SBIC was a party. At the time of the alleged breach, the attorney fee provision applied to SBIC. Dhillon would have been entitled to attorney fees had he prevailed. Under mutuality of remedy principles, SBIC is entitled to recover its attorney fees as the prevailing party.

For the first time in his reply brief, Dhillon asserts SBIC should be estopped from recovering its attorney fees because it voluntarily surrendered any right to them when it assigned the 2007 Loan to Romance. We need not consider this argument as appellate courts have concluded issues first raised in a reply brief will not be considered absent a showing of good cause for delay. "Consistent with well-established authority, absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief." (*Save the Sunset Strip Coalition v. City of West*

13.

*Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3.) "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [declining to consider an argument raised for the first time in a reply brief].) As Dhillon failed to raise this issue in his opening brief and has not shown good cause for failing to assert it earlier, we do not consider the argument.

In sum, SBIC established Dhillon sought to enforce the promissory note containing an attorney fee provision, and had Dhillon been successful, he would have been entitled to his attorney fees. Thus, the trial court did not err in awarding SBIC its attorney fees as the prevailing party on Dhillon's claims.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent SBIC.


DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


SNAUFFER, J.


14.